## City of Pittsburgh v. Streng, Appellant.

*Municipalities—Ordinances—Junk dealers—Police power—Exercise of.*

An ordinance imposing reasonable regulations upon the business of junk dealing is a proper exercise of the police power.

A municipality, in the exercise of its police power, may regulate certain occupations in addition to, and not inconsistent with, statutory regulations. The fact that the state has passed laws requiring the keeping of books by junk dealers, (Act of April 11, 1899, P. L. 37) and the purchasing of junk from minors (Act of May 5, 1899, P. L. 247) does not prevent the municipality from passing reasonable ordinances for the regulation of the industry.

A fee of $150.00 per year is presumed to be reasonable, in the absence of any evidence to the contrary.

Argued October 29, 1926. Appeal No. 135, April T., 1926, by defendant from judgment of County Court of Allegheny County, No. 678, 1922, in the case of City of Pittsburgh v. Ben Streng. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Appeal from summary conviction. Before SNEE, J.

The facts are stated in the opinion of the Superior Court.

The Court sustained the judgment of the magistrate. Defendant appealed.

*Error assigned,* among others, was the judgment of the Court.

*George Wasser,* and with him *Benjamin L. Steinberg,* for appellant.

*Thomas M. Benner,* and with him *Charles A. Waldschmidt,* for appellee.

OPINION BY LINN, J., March 3, 1927:

This appeal is from summary conviction for violating an ordinance of the City of Pittsburgh prohibiting the conduct of a junk business without a license by the Department of Public Safety. The annual license fee imposed by the ordinance on a merchant (the class of which appellant is a member) is $150, and the ordinance provides that the license "shall be granted only upon and subject to the terms, conditions and provisions hereafter set forth" (referring to subsequent sections prescribing general regulations for the conduct of such occupations). Appellant contends that the license fee and many of the conditions subject to which the license must be accepted are unreasonable and therefore void.

No evidence, except the ordinance itself and an ordinance formerly in force but repealed by this ordinance, was brought up.

The city states that the ordinance was enacted pursuant to the second class city act of March 7, 1901, P. L. 20, inter alia, Art. XIX, Sec. 3, Paragraph 43, empowering the city "To make all such ordinances, by-laws, rules and regulations, not inconsistent with the Constitution and laws of this Commonwealth, as may

be expedient or necessary, in addition to the special powers in this section granted, for the proper management, care and control of the city and its finances, and the maintenance of the peace, good government and welfare of the city, and its trade, commerce and manufactures, and the same to alter, modify and repeal at pleasure; and to enforce all ordinances by inflicting penalties upon inhabitants or other persons for the violation thereof, not exceeding one hundred dollars for any one offense, recoverable with costs, together with judgment of imprisonment, not exceeding thirty days, if the amount of said judgment and costs shall not be paid."

Appellant's first contention is that as the state had in force certain legislation concerning junk dealers, the city lacked power to add any local requirement to the conduct of that occupation. Passing the authority conferred by the act of 1901, supra, an examination of the statutes referred to by appellant, shows that the ordinance is not inconsistent with them. The Act of April 11, 1899, P. L. 37, made it unlawful without keeping books in English showing records of such transactions, for any keeper of a junk shop or second-hand store to purchase specified second-hand stuff from any person except licensed plumbers or owners of buildings from which it was taken. The Act of May 5, 1899, P. L. 247, makes it a misdemeanor for any person to buy or receive specified property from minors or unknown persons, or persons pursuing no trade, labor or employment for a livelihood. There is nothing in those acts from which it may be said that even prior to the Act of 1901, the City of Pittsburgh was prohibited from passing a regulatory ordinance such as that before us. It has been held that municipalities in the exercise of the police power may regulate certain occupations by imposing restrictions in addition to and not inconsistent with statutory regulations: 28 Cyc. p.

368; 19 R. C. L. p. 804, Sec. 111; Radnor Twp. v. Bell, 27 Pa. Superior Ct. 1; Brazier v. Phila. 215 Pa. 297, 300.

The second contention of appellant is that the terms and conditions under which the license must be issued are so unreasonable as to render the ordinance void. He complains of the amount of the license fee, $150 annually, but offered no evidence to show that it was unreasonable; the presumption is that it was reasonable: Kittanning Bor. v. Telegraph Co., 26 Pa. Superior Ct. 350; Kittanning v. Gas Co., 247 Pa. 65. He complains that section 6 is unreasonable in requiring a licensee to keep in the original form on his premises for forty-eight hours, all junk purchased, saying "This is a prohibition upon the free use of property, and a partial confiscation under the guise of regulation." For the same reason he condemns the 8th section requiring that all peddlers (the second class of junk dealers referred to in the ordinance, whose license fee is $25 annually) must dispose of junk to a merchant, as defined in the ordinance, before noon of the next day after purchase. Section 9 prohibits purchases from minors or unknown or irresponsible parties. Section 10 prohibits merchants from opening for the transaction of business before 7 A. M., and requires them to close at 6 P. M.

It is well known that junk shops were so frequently made "fences" by thieves and receivers of stolen goods as to require regulation of the occupation. The provisions of the ordinance complained of are all reasonably adapted and fairly necessary to aid in preventing the mischievous results of the unregulated conduct of the occupation: Com. v. Mintz, 19 Pa. Superior Ct. 283 (holding that the Act of 1899, supra, is constitutional); Norristown Bor. v. Puleo, 69 Pa. Superior Ct. 265. A regulation requiring a junk dealer to hold goods intact for five days before disposing of them was sustained in People v. Scrap Iron and Metal Co., 202

Michigan 469; and for thirty days in Phillips v. State, 77 Ohio State 214. In New York v. Vandewater, 99 N. Y. S. 306, a regulation prohibiting purchases by junk dealers between sunset and seven o'clock next morning, or at places other than those designated in their license, was approved. While the ninth section repeats a regulation in the Act of 1899, supra, there is no objection to issuing a municipal license conditioned upon complying with a statute.

Judgment affirmed.