## Commonwealth v. Mattero et al.

*High, Swartz, Flynn & Roberts,* for Commonwealth.
*Robert B. Brunner,* for appellants.

KNIGHT, P. J., January 23, 1947.—Defendants, having been convicted before a justice of the peace of violations of ordinance no. 329 of the Borough of Lansdale, appealed to this court, where a full hearing was had.

If the ordinance is a valid piece of legislation, the convictions must stand, for admittedly defendants have not complied with its terms.

The General Borough Act of May 4, 1927, P. L. 519, sec. 1006 (III) gives the borough council power to enact and enforce such laws, not inconsistent with the laws of the Commonwealth, as it shall deem beneficial to the borough. Under this broad delegation of power to legislate the Council of the Borough of Lansdale ordained ordinance no. 329, on May 7, 1946.

The title describes no. 329 as "An Ordinance regulating the Storage of Rubbish, Junk Scrapped Automobiles and other substances and matter which may be injurious to the Public Health and Safety". The preamble declares "Whereas, the public health and safety require the elimination of filth and places where dis-

ease may originate or by means of which disease may spread. Now, therefore, It is hereby enacted . . ."

Section 1 provides it shall be unlawful to store or continue to store offal, scrap metal, scrap metal parts and similar substances, rubbish, scrap paper, old newspapers, sweepings, manure, filth, junk, old tires or scrapped automobiles . . . in a manner which is or may be injurious to the public health, comfort or safety of the residents of the borough.

Section 11 prohibits the storage of any such material in the open but provides that it shall be stored either in fully enclosed buildings or in enclosed bins, which bins are constructed within and enclosed by a tightly built solid fence or wall constructed of brick, stone, concrete, cement block or other similar matter or materials which shall be of a minimum height of at least six feet.

Defendants are engaged in buying, selling and processing scrap metal and, in one case, scrap paper. Joseph J. Davis owns a piece of real estate situate at 600 Green Street in the Borough of Lansdale, where he has conducted his business of buying, selling and processing scrap metal for the last 24 years. The scrap is stored in piles in the open. Walter R. Emert has conducted a like establishment, in a similar maner, at 7th Street and Cannon Avenue, for 17 years. Mattero Brothers, remaining defendants, have conducted their business on a lot at 316 West 7th Street since 1934. The three establishments are what are commonly called "junk yards". Mattero Brothers handle scrap paper.

Defendants contend that the ordinance in question interferes with the use and control of their properties without a rational relation to public safety, health, morals or general welfare; that as to these defendants it is unreasonable, discriminatory and confiscatory, and hence an invalid exercise of the police power.

Counsel for the borough in their brief, describe the ordinance as "an effort to regulate scrap and junk dealers", and contend that such regulation has long been recognized in this State, as a proper subject of legislation under the police power; citing Harrison v. Commonwealth, 123 Pa. 508 (1889), Commonwealth v. Mintz, 19 Pa. Superior Ct. 283 (1902), Norristown v. Puleo, 69 Pa. Superior Ct. 265 (1918), and Pittsburg v. Streng, 90 Pa. Superior Ct. 288 (1926).

It will be noted, however, that the ordinance goes far beyond the regulation of junk dealers; it prohibits the storage of rubbish, offal, junk, etc., in the open. Junk dealers do not handle rubbish and offal. Then, the cases above cited, all hold that junk yards are proper subjects for police power regulation because those places of business so often become resorts for the disposal of goods dishonestly obtained, particularly by minors. The junk dealer has too often been found to be the "fence" for stolen property.

The present ordinance purports to be a public health measure. It does not seek to license junk yards and thus bring them under the supervision of the municipal authorities, but rather it seeks, as we view it, to drive them out of business by imposing unreasonable conditions upon them.

In White's Appeal, 287 Pa. 259 (1926), one of the leading authorities in Pennsylvania on the subject of the police power, it is said, on page 266:

"There is one matter that is quite certain, the power (police power) to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper. It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely aesthetic considerations: [citing cases].

While such regulations may not physically take the property, they do so regulate its use as to deprive the owner of a substantial right therein without compensation."

What relation does this ordinance bear to the public health?

It is charged that junk yards are harboring and are breeding places for rats, skunks and mosquitoes, but the evidence to suport this charge is meagre and unsatisfactory. Mr. Davis and Mr. Emert both testified that they never had a complaint by any one in reference to their yards, or the way they were conducted. All the witnesses called were neighbors of the Mattero Brothers. Mr. Slagel testified that rats had been on his property until he got rid of them, that he personally had never seen a skunk in or around the junk yard, and that while they had mosquitoes he had never seen pools of stagnant water in the Mattero yard, and it would be difficult to say where the mosquitoes came from. Mr. Slagel's objection to the yard was that it decreased the value of his property.

Carrie M. Vircher said she had seen rats and skunks go into the Mattero yard. She did not complain of the mosquitoes, and her chief complaint had to do with the scraps of paper which came out of the Mattero yard and settled on her lawn. May Drummond complained of the paper, and had cleaned rat dirt from her porch.

How does the ordinance seek to regulate defendants' business?

It requires them to surround the yard with a tight wall or fence, six feet high. According to the uncontradicted evidence, such a fence would cost approximately $4 a running foot, a wall, $10.

This might not be an unreasonable requirement, but the ordinance goes further, and requires that the scrap be confined in bins. Defendants testified that

each of them would require 20 bins to comply with the terms of the ordinance, and again, the evidence shows that these bins would cost approximately $1,000 each, or, an expenditure of about $20,000 by each defendant if he were to comply with the terms of the ordinance.

This we hold is an unreasonable regulation, and nearly amounts to confiscation.

If, as contended by counsel for the borough, the ordinance is an effort to regulate scrap and junk dealers, then it is plainly discriminatory, for it does not require other places of business in Lansdale, where scrap is piled in the open, to comply with its terms. The ordinance on its face contains no such discrimination, but it would seem that there has been discrimination in its enforcement.

Lansdale has many manufacturing plants, large and small, and it is a matter of almost common knowledge and practice, for these plants to have scrap piles often in the open. The evidence shows that some of these defendants, within a matter of days of the hearing, purchased and hauled from manufacturing plants in Lansdale, scrap which was stored in the open.

Junk yards are not desirable neighbors; they are unsightly places at best, but the buying, selling, processing and storage of junk is a lawful and necessary business. These defendants have been engaged in this business, at their various locations, for many years; they cannot be legislated out of existence by an ordinance which places upon their business unreasonable conditions that have no proper relation to the public health, safety or morals.

We hold that section 11 of ordinance no. 329 is, as to these defendants, invalid, and hence they must be found not guilty.

And now, January 23, 1947, defendants are found not guilty.

The costs are placed on the County of Montgomery.