## BRADLEY *v.* GROSH.

If, on the trial of a cause, a release is given to render a witness competent, and the releasee avails himself of the benefit of his testimony, the release is a bar to any future action against the releasee, upon a cause of action covered by the release: unless the same were procured by fraud, or by the fraudulent representations of the releasee, as to the testimony he would give.

Under the plea or replication of *non est factum*, the party pleading it, cannot give evidence of fraud in obtaining the deed, nothing being put in issue by that pleading, but the execution and delivery of the instrument.

It is error to submit to a jury the question of fraudulent representations in obtaining a release, in the absence of all evidence tending to show such representations.

In error to the Court of Common Pleas of Lancaster county.

*May* 11. This was an action of trespass on the case, in which Thomas Grosh, the defendant in error, was plaintiff, and John Bradley, the plaintiff in error, was defendant. The declaration contained the common money counts, and one for work, labour,

and services. To this, the defendant pleaded non assumpsit, and payment with leave, &c. An additional count, *on guarantee of defendant*, was subsequently filed by consent, when the defendant pleaded a *release to the whole narr.*, or of the whole cause of action. To this plea, the plaintiff replied *non est factum*. The plea of *release* and the replication of *non est factum*, are the only pleadings material here. The case was this: On the 18th of November, 1839, Morgan J. Thomas gave a note for $210, payable to Mark A. Hodgson, six months after date. On the 4th of October, 1841, Hodgson sold or transferred the note to James Hamilton and John Bradley, the plaintiff in error, and guarantied the payment. Evidence was given to show that this transfer and guarantee were made upon condition that the note was to be " sued out," as it was expressed, by the then next ensuing court for the county of Chester. That term of the court was held on the first Monday of November, 1841. About the latter end of October, or early in November, 1841, Bradley and Hamilton sold or transferred the note and guarantee to Thomas Grosh, the plaintiff, after Bradley had endorsed it. There was evidence given tending to show that Grosh was to bring suit, and if he failed to get the money *Bradley was to be responsible; and that Grosh was not to suffer any loss.* There was no evidence that Grosh was made acquainted with the special agreement by which suit was to be brought at the then next term as the condition upon which Hodgson was to be liable on his guarantee. Whether the transfer was made to Grosh after the term of the court referred to, or after it was too late to bring suit to that term, did not clearly appear. On the 27th December, 1842, Grosh brought suit against Morgan J. Thomas on the note; and on the 2d June, 1843, obtained an award, on which he issued a writ of *fieri facias* on the 6th July, 1843. To this writ the sheriff returned *nulla bona*. On the 26th October, 1843, suit was brought by Bradley and Hamilton for the use of Grosh *v.* Mark A. Hodgson, on the guaranty of the 4th October, 1841. This was tried before arbitrators, and an award made in favour of the plaintiff on the 18th January, 1844. The defendant in that action appealed on the next day, and on the 20th November, 1844, obtained a verdict in his favour. On the trial before the arbitrators, evidence was given at the first meeting tending to establish the special agreement requiring suit to be brought at the then next term. Upon this, the plaintiff obtained a continuance, and at the second meeting released Bradley and Hamilton from liability and

introduced them as witnesses. Upon the trial afterwards in court their testimony was rejected.

On the trial of this case before LEWIS, P. J., the following testimony, on the part of the defendant, relative to the release, and the causes which induced Grosh to execute and deliver the same to Bradley and Hamilton, on the hearing of the case of Bradley and Hamilton, for the use of Grosh, *v.* Hodgson, before arbitrators, was given by one of the counsel of Grosh in that case :—

" I was Mr. Grosh's counsel. After the first hearing we thought it necessary to have the testimony of Bradley and Hamilton. Arbitration continued—2d day of meeting, they came. Objected to on ground of interest. Grosh, Bradley, and Hamilton retired with me into another room. I prepared a release to Bradley and Hamilton from Grosh, executed by him under seal. I witnessed it ; my name is to it ; only those four were there. We came in and produced the release, and the parties (Bradley and Hamilton) were admitted as witnesses. I don't know what became of the release."

The defendant then, after giving some evidence to prove the loss of the release, offered to prove the contents thereof, which was objected to by the plaintiffs ; but the objection being waived, the witness was again called, and testified as follows :—

" I drew the release—it was substantially this—a release by Grosh of all claims that he had or might have against Bradley and Hamilton, by reason of the endorsement of the note. In my judgment it was intended to relieve Bradley and Hamilton *from any liability to Grosh, to enable them to be witnesses. It was intended, and, I believe, was an entire discharge.* They were both examined as witnesses by the arbitrators, but rejected afterwards by the court on the decision of Patterson and Reed, Post and Avery, &c.

"*Cross-examined*—This release was given to make these parties witnesses. The defendant in answer to our case showed by two witnesses, the Duffields, that Bradley and Hamilton had agreed to sue the note at the coming term. We then got the continuance to get Bradley and Hamilton. I examined them in my office. They both stated that there had no such conversation ever taken place, but on the contrary, they had asked Hodgson the consideration of the note—that he stated multicaulis. Wanted it sued out at next court, but Bradley refused. Then it was given to him to collect according to law. Then we offered them. Thought they had an interest. We then went into the back room. I asked them again what their testimony would be. They stated

it again. I told Grosh if he executed this release he would be precluded from any claim against them. *They testified before the arbitrators substantially what they stated before me in my office they would swear to*—but were excluded in court. Upon those representations of what they would swear to, I advised Grosh to execute this release. I would not have advised so, if it had not been for these representations. Hamilton and Bradley stated that the statement of Hodgson's witnesses were incorrect, to wit: that Bradley was to sue at the next court. They denied it also on oath before the arbitrators."

His honour, Judge LEWIS, after stating the case, charged the jury as follows:—

"If the jury believe that the defendant sold to the plaintiff the note of Thomas, and the guarantee of Hodgson, and agreed to be responsible if the plaintiff failed to recover upon suit brought, and believe also that the plaintiff used due diligence in the collection of the money, and failed to collect it by reason of the insolvency of Morgan J. Thomas, and the discharge of Mark A. Hodgson from his guarantee by the failure of Bradley, while he held it, to bring suit within the time required by the agreement, then the plaintiff may recover in this action, unless his claim is barred by his release.

"If the plaintiff released the defendant from all liability arising out of the transaction, for the purpose of using him as a witness, and availed himself of the testimony of Bradley accordingly, the plaintiff is barred, unless the release was obtained by the fraud of Bradley.

"In deciding upon the question of fraud, the jury will bear in mind that conflicting testimony, touching the matter stated by Bradley, was heard and known to the plaintiff before he executed the release, and that Bradley did testify substantially as he had stated he would, before the release was executed. To impeach the release on the ground of fraud, some new facts should be shown, which were not known to the plaintiff at the time of its execution. If he voluntarily executed it with a full knowledge of all the facts now known, he has but small cause of complaint. A mere mis-recollection of facts, or a mistake of the defendant in regard to them, would not be sufficient to invalidate the release. Nothing short of a false representation of facts, known by the defendant at the time to be false, would produce that effect. This involves a charge of perjury as well as fraud, and on that account should be examined with care. But if, after such examination, the jury find

that the release has been obtained by fraud, the jury should disregard it as invalid."

To this charge, the defendant excepted.

The jury returned a verdict in favour of the plaintiff for $455 damages, and six cents costs. The defendant thereupon sued out this writ, and assigned the following errors here :—

1. The court erred in their charge to the jury, in instructing them that they should inquire whether the release pleaded was obtained by the fraud of Bradley; "that a false representation of facts, known by the defendant at the time to be false, would produce that effect; and if the jury find that the release has been obtained by fraud, the jury should disregard it as invalid." The pleadings in the case did not put in issue the validity of the release, on the ground of fraudulent representation of facts; and the reference of that question to the jury, was manifest error.

2. The court erred in the whole of that part of their ·charge relating to the effect of the release pleaded; there was no evidence in the case which justified the court in referring the question of fraudulent representations to the jury.

*Franklin* and *Fordney*, for plaintiff in error.

*Frazer*, contrà.

*May* 18. COULTER, J.—The learned judge below states the law on the subject of the release with great clearness and force. But he submits the question of its being procured by the fraud of Bradley to the jury, when there existed no proof in the cause conducing to show the fraud. Fraud is not to be presumed, but must be proved; and in most cases, it is the most dangerous kind of question to be submitted to a jury without proof. At all events, as we are unable to perceive any evidence in the cause that Bradley procured the release by fraudulent representations, or failed to testify what he alleged he could give in evidence, or did any other act with the design of procuring the release fraudulently, we must reverse the judgment. It has been often ruled that it is error to submit a fact or question to the jury, of which there is no evidence.

The defendant pleaded a release of the cause of action covered by the declaration; to which the plaintiff replied *non est factum.* Under this replication, the plaintiff could not legally have given evidence that the release was procured by fraud. The defendant came to trial on the ground of maintaining that the release was the deed of the plaintiff. Under the plea of payment with leave,

&c., in Pennsylvania, the defendant may give in evidence fraud, want of consideration, &c.; but that is under a well established practice, understood by all the profession, for the purpose of letting in an equitable defence. And the craving leave to give the special matter, puts the plaintiff on his guard, so that he may demand a specification. But, under the plea of *non est factum*, the plaintiff has no notice whatever of any special matter, nothing to put him on his guard; and no plea of *non est factum* is entered with any other view than putting in issue the legal execution of the deed. The defendant may give in evidence anything which shows that the *execution* of the instrument or deed was void; such as, that the defendant was a lunatic at the time of the execution, or, if a female, that she was married at the time. But an equitable defence, such as payment, fraud, or want of consideration, is not covered by the plea of *non est factum*. Why, then, should the rule be different in the case of a replication? Almost all replications are special in their nature, and it was as easy to reply that the release was procured by fraud, as that it was not the deed of the plaintiff. By the replication of *non est factum*, nothing was put in issue but the execution of the deed, and whether any circumstance made the execution void, such as lunacy, &c. It gave the defendant no kind of notice that proof of its being procured by fraud, would be adduced. If the plaintiff was allowed to take his chance first on the replication of *non est factum*, and, if he failed there, was permitted to throw himself on the issue of fraud, he would be allowed the benefit of two replications, one of which was unknown to the defendant, and made no part of the issue. It is necessary to preserve forms, so as to enable parties to come prepared with a knowledge of what is to be the issue to be tried; otherwise, justice will be in fact blind. There was neither evidence of fraud, that we can perceive, nor was it involved in the issue. This is not the case of an imperfect issue, or of informal pleading, which might be cured after a trial and verdict. But it is the case of a perfect issue, formal in all its parts, which conveyed precise notice to the defendant, and a trial upon another issue or state of pleading unknown to the defendant.

Judgment reversed, and a *venire de novo* awarded.