Western Pennsylvania Restaurant Association *v.* Pittsburgh, Appellant.

Argued October 5, 1950. Before Drew, C. J., Stern, Stearne, Jones and Chidsey, JJ.

reargument refused January 24, 1951.

*Anne X. Alpern,* City Solicitor, with her *Joseph A. Langfitt, Jr.* and *J. Frank McKenna, Jr.,* Assistant City Solicitor, for appellants.

*Leonard Boreman,* with him *Krause & Boreman,* for appellees.

*Charles Denby* and *James Craighead Kuhn, Jr.,* with them *Reed, Smith, Shaw & McClay* and *Wilner & Wilner,* for North Side Community Council et al., amici curiae.

Opinion by Mr. Justice Horace Stern, January 2, 1951:

The question is whether the City of Pittsburgh may validly enact an ordinance to safeguard the public health by regulating the operation of restaurants within the city. Ordinarily the answer to such a question would clearly be in the affirmative because the city's Charter Act (Act of March 7, 1901, P.L. 20, Article XIX, section XXXIII) vests in it the power "To make regulations to secure the general health of the inhabitants . . . .",—a power which, indeed, it would probably possess even in the absence of such a specific grant: *Wartman v. The City of Philadelphia*, 33 Pa. 202, 209; *Adams v. New Kensington*, 357 Pa. 557, 563, 564, 55 A. 2d 392, 395.[1] In the present instance, however, further consideration of the problem is required because of the enactment by the legislature of the Act of May 23, 1945, P.L. 926, entitled: "For the protection of the public health by regulating the conduct and operation of public eating and drinking places within this Commonwealth; requiring their licensing; imposing certain duties on the Department of Health of this Commonwealth and on the local health authorities; and providing penalties." Generally speaking, the ordinance here in question, which was approved September 8, 1948, covers substantially the same ground and has the same objectives as the State statute.

The Act of 1945 provides that every proprietor of a public eating or drinking place must obtain a license from the health authorities of the city, borough, town, or first class township where such eating or drinking place is located, or from the State Department of Health where the location is in a township of the second class. A license may be issued only upon inspec-

---

[1] In a city of the second class the care, management, administration and supervision of all matters relating to the public health and sanitation are committed to its Department of Public Health (Act of April 1, 1909, P. L. 83, section 4).

tion of the premises, the facilities and the equipment by the licensor, and upon their being found adequate to the protection of the public health and comfort of patrons. The State Department of Health is authorized to make such reasonable rules and regulations as may be deemed necessary for carrying out the provisions and intent of the act. There are several provisions prescribing sanitary requirements in regard to the health of the employees who handle food or drink, the laundering of towels and napkins, the washing of dishes and glasses, the cleanliness of kitchens, dining rooms, cellars and refrigerators. There is a clause to the effect that "Any proprietor who, after investigation made by the licensor, has failed or refused after a reasonable interval to correct conditions found to constitute a violation of this act, or of the regulations of the department pertaining to public eating or drinking places, shall have his license revoked."

The city's ordinance is entitled "An Ordinance to carry into effect in the City of Pittsburgh the provisions of the Act of Assembly of 1945, P. L. 926, to safeguard the public health within the City of Pittsburgh; defining restaurant . . . etc.; requiring permits for the operation of such establishments; prohibiting the sale of adulterated, unwholesome or misbranded food or drink; regulating the inspection, grading, regrading and placarding of such establishments, the enforcement of this ordinance; providing for the examination of employees; regulating the construction, reconstruction and alteration of restaurants, and the fixing of penalties." It provides that the director of the city's Department of Public Health shall require inspections to be made of all public eating and drinking places within the City of Pittsburgh at least twice a year, or more often if necessary, for the purpose of determining whether the proprietors are complying with the requirements of the Act of Assembly and

the ordinance. It is made unlawful for any person to operate a restaurant in the city without obtaining a permit from the local Department of Public Health. It is provided that restaurants should be graded as "A", "B" or "C" restaurants. Grade "A" restaurants are defined as those which comply with all the sanitary requirements specified in the ordinance and in the rules and regulations adopted by the State Department of Health. "B" restaurants are defined as those which comply with all the sanitary requirements exacted of grade "A" restaurants except certain ones in respect to the condition of floors, walls and ceilings, the lighting and ventilation of the premises, and freedom from litter and rubbish. Grade "C" restaurants are defined as those which fail to comply with either the Grade "A" or Grade "B" requirements. The ordinance provides that no restaurant should be allowed to operate within the city unless it conforms to the Grade "A" or Grade "B" requirements, and every restaurant must display at all times, in a place designated by the authorities, a notice which proclaims the grade of the establishment.

Western Pennsylvania Restaurant Association—the members of which are the owners and operators of a number of restaurants in Western Pennsylvania—and certain individual owners and operators of restaurants within the City of Pittsburgh, brought a bill of complaint on behalf of themselves and all others similarly situated, praying for a decree declaring the city's ordinance to be illegal and void and enjoining the city's officials from carrying out or enforcing its provisions. Several civic organizations were allowed to appear in the proceedings as amici curiae and to present their views in opposition to the bill. Plaintiffs rested their claim to relief upon three principal contentions: (1) that the Commonwealth had, by the Act of 1945, established a uniform and comprehensive system for the

regulation of restaurants throughout the State and had thereby pre-empted the field in regard to that subject, so that no municipality had the right to enact any further regulatory provisions; (2) that some of the provisions of the ordinance were so inconsistent with those of the State statute, that the ordinance must give way to the supremacy of the Act; and (3) that the grading system established by the ordinance was a violation of the constitutional provisions in regard to due process and equal protection of the laws.

The learned chancellor who conducted the hearing enjoined the enforcement of the ordinance, and, the court en banc having entered a final decree to the same effect, the City of Pittsburgh, and the mayor and other municipal officers who had been joined in the bill as defendants, now appeal.

(1) There are statutes which expressly provide that nothing contained therein should be construed as prohibiting municipalities from adopting appropriate ordinances, not inconsistent with the provisions of the act or the rules and regulations adopted thereunder, as might be deemed necessary to promote the purpose of the legislation.[2] On the other hand there are statutes which expressly provide that municipal legislation in regard to the subject covered by the State act is forbidden.[3] Then there is a third class of statutes which, regulating some industry or occupation, are silent as to whether municipalities are or are not permitted to enact supplementary legislation or to impinge in any manner upon the field entered upon by the State; in such cases

[2] Examples: Act of May 9, 1935, P. L. 158, adding section 15-A to the Act of June 19, 1931, P. L. 589 (see *Grisbord v. Philadelphia*, 148 Pa. Superior Ct. 91, 24 A. 2d 646); Act of July 2, 1935, P. L. 589, section 18 (see *Dairymen's Association v. City of Pittsburgh*, 91 P. L. J. 169).

[3] Example: Act of June 7, 1915, P. L. 900, section 24.

the question whether municipal action is permissible must be determined by an analysis of the provisions of the act itself in order to ascertain the probable intention of the legislature in that regard. It is of course self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute: *Bussone v. Blatchford,* 164 Pa. Superior Ct. 545, 67 A. 2d 587. But, generally speaking "it has long been the established general rule, in determining whether a conflict exists between a general and local law, that where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation with subordinate power to act in the matter may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable." *Natural Milk Producers Association v. City and County of San Francisco,* 20 Cal. 2d 101, 109, 124 P. 2d 25, 29. Thus it has been held in our own Commonwealth that municipalities in the exercise of the police power may regulate certain occupations by imposing restrictions which are in addition to, and not in conflict with, statutory regulations: *Brazier v. Philadelphia,* 215 Pa. 297, 301, 64 A. 508, 510; *Radnor Township v. Bell,* 27 Pa. Superior Ct. 1; *City of Pittsburgh v. Streng,* 90 Pa. Superior Ct. 288, 290, 291. But if the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid: *Commonwealth v. Gillam,* 8 Pa. 50; *Girard Trust Co. v. Philadelphia,* 336 Pa. 433, 9 A. 2d 883; *Borough of Yeadon v. Galen,* 108 Pa. Superior Ct. 114, 164 A. 837; *Commonwealth v. Dickey,* 115 Pa. Superior Ct. 164, 175 A. 285; *Devlin v. City of Wilkes-Barre,* 69 D. & C. 99.

In the present instance we see nothing in the Act of 1945, P.L. 926, which indicates an intention on the part of the Legislature so to occupy and pre-empt the field of legislation in regard to the regulation of public eating and drinking places within the Commonwealth as to preclude supplementary legislation on the part of municipalities where local conditions suggest the need of the imposition of additional standards. It places the function of licensing in the local authorities (except where the restaurant is located in a second class township) and specifically provides that no license shall be issued until inspection of the premises, the facilities and the equipment has been made by the licensor, that is, in this case, by the city, and these are found to be—not merely in comformity with the requirements of the State statute—but "adequate to the protection of the public health and comfort of patrons," thus apparently allowing a wider range of discretion on the part of the local licensing body. Moreover it is obvious, even in the absence of express testimony to that effect, that the sanitary standards and appropriate regulations in the case of restaurants in a large city such as Pittsburgh might well be, and no doubt are, quite different from those applicable to rural communities, in view, among other conditions, of the usually larger numbers of patrons and the congestion of buildings with consequent special problems of their construction and ventilation.

(2) Although the sanitary requirements prescribed in the ordinance and the rules and regulations adopted by the State Department of Health are practically identical it is true that some of the provisions of the ordinance are inconsistent with those of the 1945 Act. For example, the penal provisions of the ordinance are more drastic, and the fines to be imposed for violations are made payable to the city instead of, as in the statute, to the county where the restaurant is located.

Where such minor discrepancies exist the provisions of the statute and the rules and regulations adopted thereunder must, of course, prevail, but such variances cannot be held to invalidate the ordinance as a whole. The fact that the ordinance does not provide for a right of appeal to the courts from the refusal of the licensor to grant a permit is immaterial in view of the fact that such right must be held to exist even in the absence of an express grant thereof. Nor is the grading provision of the ordinance inconsistent with the general scheme of inspection and regulation established by the statute. Such a classification is merely the recognition and expression of an ascertained fact, namely, that the restaurant in question conforms with all the stipulated requirements, in which case it is graded "A", or fails to comply with certain of them, in which case it is graded "B". Nor can there be any legal objection to the placarding or publication of the status of the restaurant; certainly it would be not only the right, but even the duty, of the authorities to inform the public as to the conditions found on such inspections. It is contended by plaintiffs that, under the statute, the license of any proprietor who does not operate his restaurant in conformity with the provisions of the Act and the regulations thereunder of the State Department of Health must be revoked, and that therefore the city has no right to license grade "B" restaurants and thereby allow them to operate; section 11 of the Act, however, provides that such revocation should take place only if the proprietor fails or refuses to correct conditions *"after a reasonable interval";* therefore, the city may properly license a grade "B" restaurant in order to give it a reasonable opportunity to bring its operations up to the grade "A" standard; if it fails to do this the license granted to it may be revoked at any time.[4]

---

[4] The ordinance provides that grade "C" restaurants should not be allowed to operate at all after January 1, 1950.

The provision of the ordinance that it should be enforced "in accordance with the interpretations thereof contained in the 1943 edition of the U. S. Public Health Service Code Regulating Eating and Drinking Establishments" does not involve any improper delegation of legislative power: *Commonwealth v. Sweeney*, 61 Pa. Superior Ct. 367; cf. *Commonwealth v. Warner Bros. Theatres, Inc.*, 345 Pa. 270, 27 A. 2d 62.

(3) The objections advanced by plaintiffs to the constitutionality of the ordinance are without merit. While it is true, as stated in *Hertz Drivurself Stations, Inc. v. Siggins*, 359 Pa. 25, 46, 58 A. 2d 464, 476, that the legislature may not arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations, a legislative body certainly may, in the exercise of the police power, impose reasonable limitations and regulations upon the conduct and operation of a business upon which the health of the people is so vitally dependent. Nor is there any unconstitutional discrimination among those affected by the terms of the ordinance, since its provisions apply equally to all who are engaged in the restaurant business, none of whom is subjected to restrictions, or held entitled to privileges, different from those of other restaurant proprietors and operators under the same conditions: *Philadelphia v. Brabender*, 201 Pa. 574, 578, 51 A. 374, 375; *Domestic Fuel Co. v. Thomas*, 318 Pa. 320, 323, 178 A. 477, 478.

Decree reversed and bill dismissed at plaintiffs' costs.