532 A.2d 500

William A. Duff and Dr. Richard W. Janssen and Richard B. Springer, individually and as members of the Langhorne Rod and Gun Club, Inc., Langhorne Rod and Gun Club, Inc., itself, and as a member club of the Pennsylvania Federation of Sportsmen's Clubs, Inc. and the Pennsylvania Federation of Sportsmen's Clubs, Inc., Appellants *v.* Township of Northampton et al., Appellees.

Argued June 9, 1987, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Steven J. Schiffman, Serratelli & Schiffman,* with him, *Robert C. Whitley, III,* for appellants.

*Jeremiah J. Cardamone,* with him, *Stephen J. Fire-oved* and *Ann Thornburg Weiss, Timoney, Knox, Hasson & Weand,* for appellees.

OPINION BY SENIOR JUDGE NARICK, October 15, 1987:

This case involves the question of whether a state statute prohibiting hunting with firearms within 150 yards (450 feet) of any occupied dwelling precludes a municipal ordinance operating in the same area. The Court of Common Pleas of Bucks County (trial court) issued a final decision and order on September 12, 1986 dismissing Petitioners' exceptions to its decision and order of June 17, 1986 which concluded that the Northampton Township (Township) Ordinance No. 204 (Ordinance), as amended, is valid and not preempted by The Game Law (Game Law), Act of June 3, 1937, P.L. 1225, *as amended,* 34 P.S. §§1311.1-1311.1502.[1] The trial court further held that the Township, a second class township, had the power to enact the Ordinance as a reasonable exercise of its police powers. The trial court, in rejecting the preemption argument, concluded that the right to hunt is only a qualified privilege and that the Game Law's "safety zone" does not provide as much protection as that provided in the Ordinance and, therefore, the state's "safety zone" must be treated as only a minimum "safety zone". The trial court, concurring with the New Jersey Court in *Township of Chester v. Panicucci,* 62 N.J. 94, 299 A.2d 385 (1983), held that the Game Law is incomplete and that the Township could and did adopt complementary regulations. The trial court further opined that the Game Law seeks

---

[1] The Game Law was substantially reenacted in the Game and Wildlife Code (Code), 34 Pa. C. S. §§101-2965. The Code became effective July 1, 1987. Therefore, the relevant law for purposes of the present case is the Game Law.

primarily to protect the hunter and the hunted and not the non-hunter. For the reasons set forth below, we respectfully reverse.

Petitioners, in their appeal of the trial court's decision, supported by the Attorney General[2] and the Pennsylvania Game Commission (Game Commission), as *amici curiae,* contend that the Game Law, administered by the Game Commission made up of eight commissioners appointed by the Governor and confirmed by a two-third vote of the Senate, has preempted the field and that the ordinance is invalid as an unreasonable exercise of the Township's police power. Our scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Kasavage v. City of Philadelphia,* 105 Pa. Commonwealth Ct. 554, 524 A.2d 1089 (1987); *Pidstawski v. South Whitehall Township,* 33 Pa. Commonwealth Ct. 162, 380 A.2d 1322 (1977).

The Petitioners commenced this action by filing a complaint seeking a declaratory judgment that the Ordinance is invalid. The Petitioners are made up of residents of: (1) the Township and licensed by the Game Commission to hunt; (2) residents who are seeking to obtain a license to hunt, having taken the Game Commission hunter's safety education course required for any first time hunter; (3) the rod and gun club, which owns 53 acres in the Township and has approximately 500 members who are hunters and licensed to hunt by the Game Commission; and (4) the Pennsylvania Feder-

---

[2] The Pennsylvania Attorney General stated:
It is our opinion . . . that regulations regarding areas for hunting and weapons to be used in hunting are exclusively within the province of the Commission, and to the extent that local ordinances invade this province, then to that extent, such ordinances are invalid.
Official Attorney General Opinion No. 17 of 1974.

ation of Sportsmen's Clubs, with approximately 580 clubs in 62 counties of Pennsylvania and 83,000 members, including residents of the Township who are licensed to hunt.

Section 808 of the Game Law, 34 P.S. §1311.808, prescribes a "safety zone", which prohibits hunting or discharging firearms within 150 yards ". . . of any *occupied dwelling house, residence or other building or camp occupied by human beings, or any barn, stable or other building unit in connection therewith" without permission of the owner or the tenant thereof* (emphasis added).[3] Thus, under the Game Law, hunting may take place throughout the Commonwealth so long as the hunter is not within 150 yards of any dwelling structure referred to above. The moving radius established by the Game Law or "safety zone" translates into 14.6 acres which are controlled by any dwelling place. The 14.6 acres are calculated by drawing a circle with the dwelling place as defined in the above statute in the center and the 150 yards as the radius. Therefore, the "safety zone", restricts hunting within 14.6 acres. There is no provision in the Game Law which limits hunting in areas as large as 20 acres as provided in the Ordinance.

The Township, a second class township in Bucks County, has a population of approximately 31,000 people and an area of approximately 26.6 square miles. The Township, pursuant to complaints by a number of Township residents regarding the dangers of hunting in the more heavily populated parts of the Township, and relying on the authority granted in Section 702 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §65747,[4] enacted the Ordi-

---

[3] This section was repealed and replaced by 34 Pa. C. S. §2505.

[4] This Section provides "To take all needful means for securing the safety of persons or property within the township, including the

nance in October, 1983. This Ordinance, as amended in 1986, makes it unlawful for any person "to hunt for or kill game of any kind through the use of a bow and arrow or any firearm or weapon from which a shot or other object is discharged" within an area designated as the Township "safety zone", except that the Township Chief of Police shall grant the owner or person in control of 20 or more contiguous acres of property within the "safety zone" a permit to hunt on that property.[5]

The "safety zone" created by the Ordinance divides the Township into two districts, the boundary between them being Second Street Pike, a major road which runs through the Township. The "safety zone" south of Second Street Pike, encompasses the more densely populated portion of the Township. In the northern, less densely populated portion of the Township, there are no

---

power to adopt ordinances defining disturbing the peace within the limits of the township and to provide in such ordinances for the imposition of penalties for the violation thereof, . . ."

[5] Ordinance No. 204 provides:

B.   It shall be unlawful for any person to hunt for, catch, take, wound or kill game of any kind through the use of a bow and arrow, or any firearm or weapon from which a shot or other object is discharged, within those areas of the Township of Northampton designated as 'Northampton Township safety zones', except as provided in Section 3.

Ordinance No. 234 provides:

3.   The Chief of Police shall approve an application for authorization to hunt within the safety zone provided that:

(a)   the application is made by the owner(s) or person(s) in control of the property(ies) upon which authorization to hunt is sought; and

(b)   the total acreage of the property upon which authorization to hunt is sought contains a minimum of twenty (20) acres within the Northampton Township Safety Zone, or, in the event of more than one property, the properties are contiguous, as provided in subsection 3.A.1. hereof, and contain a minimum of ten (10) acres each.

restrictions upon hunting or the use of firearms and bows and arrows. Thus, while the Ordinance is broader in scope than the Game Law, it is, in substance, duplicative insofar as the possession of firearms for the purpose of hunting is concerned. The Ordinance permits hunting in the designated "safety zone" only in areas consisting of 20 or more acres and only with the approval of the Chief of Police. No provision in the Game Law requires a hunter to apply to the chief of police of a second class township for permission to hunt. There is a difference in the penalty provisions of the two enactments. The Game Law violators of the "safety zone" are subject, upon conviction, to a sentence of paying a fine of $25 and costs of prosecution. Violators of the Ordinance are punishable upon conviction, to be sentenced to paying a fine not to exceed $300 plus costs of prosecution and/or imprisonment not to exceed 30 days.

The trial court concurred with the New Jersey Court in *Panicucci* that upheld a local ordinance prohibiting the discharge of firearms for the purpose of hunting within 300 feet of a dwelling or within 400 feet of a school playground. The New Jersey Court concluded that the New Jersey Game Law must be treated as only a minimum safety zone, is incomplete and that the township, therefore, could adopt complementary regulations. The New Jersey case is distinguishable and not controlling in our case. The New Jersey Court found that the New Jersey constitution and statute did not preclude a local municipality from passing complementary regulations to the Game Law. It stated that "municipalities have been granted broad police power over matters of local concern and interest." This general principle is contrary to the Pennsylvania law where there is no "intent on the part of the legislature to delegate to second class townships vast and extensive police powers". *Commonwealth v. Ashenfelder,* 413 Pa. 517, 522, 198 A.2d 514, 516 (1964). In our case, the town-

ship ordinance in question does not merely add to the Game Law, but directly conflicts with it. The Game Law is designed not only to protect potential victims of gun accidents, but also provides an all-encompassing policy by designing a balanced safety zone for the entire state. Balancing the need for uniform regulations with the need for hunting and the need to control the wild animal population, the state has protected against harms that would result from either a smaller "safety zone" or a larger "safety zone". A municipality, accordingly, is not more empowered to reduce the size of the zone than to increase it.

The matter of preemption, is a judicially created principle, based on the proposition that a municipality, as an agent of the state, cannot act contrary to the state. This principle has previously been thoroughly considered by our courts. Leading cases are: *Council of Middletown Township v. Benham,* 514 Pa. 176, 523 A.2d 311 (1987) (a township ordinance dealing with sewage and sewers was not invalid based on the Sewage Act which did not intend to preempt by giving municipalities specific authority to issue permits, inspect facilities, and collect fees; and that the legislature intended to combine state and local powers to regulate sewage disposal); *City of Pittsburgh v. Allegheny Valley Bank,* 488 Pa. 544, 412 A.2d 1366 (1980) (the legislature preempted the banking field based on commercial necessity and need for uniformity); *Harris-Walsh, Inc. v. Dickson City Borough,* 420 Pa. 259, 216 A.2d 329 (1966) (the legislature expressly preempted the field of anthracite strip mining, because historically, local governments were unable to regulate surface mining activities); *Ashenfelder* (a municipal ordinance enacted for the safety of the public made it an offense to use firearms for hunting in the township, except with the prior consent of the owner of property, was struck down);

*Hilovsky Liquor License Case,* 379 Pa. 118, 108 A.2d 705 (1954) (the legislature preempted the liquor field); *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 77 A.2d 616 (1951) (the state legislation did not preempt the field in regard to regulation of public eating and drinking places which provided that the license must be obtained upon inspection of the premises, facility and equipment from the health authorities of the municipalities); *Township of Ross v. Crown Wrecking Co., Inc.,* 93 Pa. Commonwealth Ct. 268, 500 A.2d 1293 (1985) (the township's landfill ordinance regulating noise pollution, hours of operation, vehicle maintenance was preempted by the state's Solid Waste Management Act); *Municipality of Monroeville v. Chambers Development Corp.,* 88 Pa. Commonwealth Ct. 603, 491 A.2d 307 (1985) (a municipal ordinance prohibiting operations of landfills during certain hours and days was preempted by the state's Solid Waste Management Act); and *Open Pantry Food Marts v. Commonwealth ex rel. Township of Hempfield,* 37 Pa. Commonwealth Ct. 423, 391 A.2d 20 (1978) (local regulations added to state regulations in the dispensing of gasoline were not preempted by the state police regulation).

The general principles flowing from the decisions are well recognized as pertinent to this case and are cogently summarized in our Supreme Court's recent decision *Council of Middletown Township,* which stated:

> The state is not presumed to have preempted a field merely by legislating in it. The General Assembly must clearly show its intent to preempt a field in which it has legislated. Retail Master Bakers Association v. Allegheny County, 400 Pa. 1, 161 A.2d 36 (1960). *See also* United Tavern Owners v. Philadelphia School District, 441 Pa. 274, 272 A.2d 868 (1971) (Opinion Announcing

the Judgment of the Court). The test for preemption in this Commonwealth is well established. Either the statute must state on its face that local legislation is forbidden, or 'indicate[] an intention on the part of the legislature that it should not be supplemented by municipal bodies.' Western Pennsylvania Restaurant Association v. Pittsburgh, 366 Pa. 374, 381, 77 A.2d 616, 620 (1951). *See also* Harris-Walsh, Inc. v. Dickson City Borough, 420 Pa. 259, 216 A.2d 329 (1966). If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation is permitted. Western Pennsylvania Restaurant Association, supra.

514 Pa. at 180, 523 A.2d at 313.

In the cited *Western Pennsylvania Restaurant Association v. Pittsburgh* case, our Supreme Court zeroed in on what is the general rule in determining whether a conflict exists between a general state law and local law:

But, generally speaking 'it has long been the established general rule, in determining whether a conflict exists between a general and local law, that where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation with subordinate power to act in the matter may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable'. Natural Milk Producers Association v. City and County of San Francisco. Thus it has been held in our own Commonwealth that municipalities in the exercise of the police power may regulate certain occupations by imposing

restrictions which are in addition to, and not in conflict with, statutory regulations: Brazier v. Philadelphia; Radnor Township v. Bell; City of Pittsburgh v. Streng. *But if the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid:* Commonwealth v. Gillam; Borough of Yeadon v. Galen; Commonwealth v. Dickey; Devlin v. City of Wilkes-Barre.

366 Pa. at 381, 77 A.2d at 620 (citations omitted) (emphasis added).

From the above authority it is clear that municipalities have been granted limited police power over matters of local concern and interest as specified in several of the cases cited above. However, their scope does not extend to subjects inherently in need of uniform treatment or to matters of general public interest which necessarily require an exclusive state policy. In addition, a municipality may be foreclosed from exercising power it would otherwise have if the state has sufficiently acted in a particular field. Obviously local legislation cannot permit what a state statute or regulation forbids or *prohibit what state enactments allow.* Beyond such manifest conflicts with state policy, our cases establish that a municipality is precluded from exercising its power in an area which the state has preempted.

True, it is not enough that the legislature has legislated upon the subject for the question is whether the legislature intended its action to preclude the exercise of the delegated police powers. Preemption analysis calls for the answer initially to whether the field or subject matter in which the ordinance operates, including its effects, is the same as that in which the state has acted. If not, then preemption is clearly inapplicable.

An affirmative answer calls for a further search for it is not enough that the legislature has legislated upon the subject. The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act.

The problem thus becomes one of determining the intent of the legislature in enacting the Game Law. Conceding, as found by the trial court, that the Game Law does not on its face expressly forbid local legislation, it is nevertheless self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory or inconsistent with the state statute. In other words, it cannot permit what a state statute or regulation forbids or prohibit what the state enactments allow.

Pertinent questions in determining the preemption issues are: (1) Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the legislature has permitted? (2) Was the state law intended expressly or impliedly to be exclusive in the field? (3) Does the subject matter reflect a need for uniformity? (4) Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation? (5) Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature? Based on the facts and our review of the law, we answer each of the above questions in the affirmative.

A close examination of the Game Law and regulations promulgated thereby indicates clearly that it was intended that the Game Law should not be limited by municipalities. The Game Law clearly preempts the field of hunting. For example, Section 101 provides, *in-*

*ter alia,* that the ownership, jurisdiction over, and control of wild animals and wild birds as defined in the Game Law are declared to be in the Commonwealth, in its sovereign capacity, to be controlled, regulated, and disposed of in accordance with provisions of the Game Law.[6] Section 210 provides that it is the duty of the Game Commission to protect, propagate, manage, and preserve the game, fur-bearing animals, and protected birds of the Commonwealth, and to enforce by proper action or proceedings, the laws of this Commonwealth relating thereto.[7] Section 501 gives the Game Commission the authority to fix seasons, shooting hours, and daily, season and possession limits, or remove protection and declare an open season; or increase, reduce or close seasons, for all species of game birds and game animals and all other wild birds and wild animals, through the entire Commonwealth or in any part thereof, or limit the number of hunters in any designated area and prescribe the methods of hunting therein.[8] Section 807 prohibits the shooting at game across public highways while hunting or to shoot while hunting within 25 yards of a public highway.[9] *Section 808 prohibits the discharge of any firearm within 150 yards of any occupied building.*

In addition, the Game Law specifically relates to property damage and safety regulations throughout the Commonwealth. Section 801 makes it unlawful for any person while hunting or trapping to cause any damage to real or personal property throughout the Common-

---

[6] This section was repealed and replaced by 34 Pa. C. S. §102.

[7] This section was repealed and its subject matter was replaced by 34 Pa. C. S. §322.

[8] This section was repealed and its subject matter replaced by 34 Pa. C. S. §2102.

[9] This section was repealed and replaced by 34 Pa. C. S. §2504.

wealth.[10] Section 802 makes it unlawful for any person throughout the Commonwealth to litter while hunting or trapping.[11] Section 803 makes it unlawful for any person while hunting or preparing to hunt to cause damage to trees.[12] Section 805 makes it unlawful throughout the Commonwealth to hunt or trap while under the influence of alcohol or drugs.[13] Section 806 makes it unlawful for any person to have a loaded firearm in his vehicle throughout the Commonwealth.[14] Section 702 makes it illegal to hunt on Sundays and at night.[15] Section 703(f) gives the Game Commission the authority to prescribe: (1) the type of firearms or bow and arrow and the type of ammunition to be used in any designated area of the Commonwealth *in the interest of public safety,* and (2) the proper management of game birds and game animals.[16]

The Game Commission issues hunting licenses only after the applicant has completed a Hunter Education and Safety course. 34 P.S. §1311.301(a).[17] As required by statute, the Game Commission establishes the content of the Hunter Education and Safety Program and

---

[10] This section was repealed and has no counterpart in the Code.

[11] This section was repealed and has no counterpart in the Code.

[12] This section was repealed and replaced by 34 Pa. C. S. §2511.

[13] This section was repealed and replaced by 34 Pa. C. S. §2501.

[14] This section was repealed and replaced by 34 Pa. C. S. §2503.

[15] This section was repealed and has no counterpart in the Code but see 34 Pa. C. S. §2303.

[16] This section was repealed and has no counterpart in the Code but see 34 Pa. C. S. §2308.

[17] This section was repealed and replaced by 34 Pa. C. S. §2704.

trains the instructors of that course. The Game Commission makes no distinction between a hunter safety course taught in Erie County and one taught in Bucks County. The Game Commission also does not take into account any individual ordinances that may be enacted by local municipalities.

The hunter safety instructors are taught and in turn teach the hunters in Pennsylvania only about the "safety zone" prescribed by the Game Law. That is, a hunter is not permitted to hunt within 150 yards of an occupied dwelling structure.

In addition, the Game Commission, acting pursuant to Section 703(f) of the Game Law, has enacted additional safety regulations which has the effect of limiting hunting in the Township to only the use of a shotgun not smaller than 20 gauge. 58 Pa. Code §139.8 and 58 Pa. Code §139.9 restricts the type of ammunition used in the congested areas of southeastern and southwestern Pennsylvania respectively, which includes the Township herein.

It should be noted that the Township is not without a remedy with respect to any safety issues. In the event that the Township believes that the Game Commission's regulations are inadequate or incomplete, it may file a petition pursuant to 1 Pa. Code §35.18 with the Game Commission and request a hearing relative to the addition or amendment of the regulatory authority already established within the Game Commission. Significantly, it should be noted that the Township has neither attempted, nor in fact availed itself of this remedy in the event it feels its citizens are in danger.

It is crystal clear that the Game Commission is charged with the enforcement of all laws in the Commonwealth relating to hunting and the management of game. Local police are also empowered to assist in the enforcement of the Game Law including any alleged vi-

olation of the 150 yard "safety zone". Also, it is quite clear that the Commonwealth of Pennsylvania through the legislative enactment of the Game Law has provided a general tenor indicating an intention on the part of the Commonwealth that it should not be supplemented by municipal bodies and local legislation. Thus, the Pennsylvania General Assembly has determined that the Game Commission is authorized to regulate hunting and trapping activities within this Commonwealth and the promotion of public safety related thereto. It can only be concluded that the legislature has preempted the field of public safety and the regulation of hunting and trapping by providing the authority and the means for the Game Commission to promote public safety.

In view of the conclusion we have reached that the subject matter of the Ordinance has been preempted by the state legislative enactment of the Game Law which empowers the Game Commission to regulate hunting throughout the Commonwealth, we need not consider the Petitioner's alternative argument that the Ordinance is invalid as an unreasonable exercise of the police power under Section 702 of The Second Class Township Code.[18]

To summarize, the basic purpose of the Game Law is to create comprehensive and uniform regulation of hunting throughout the Commonwealth. The legislation

---

[18] Relying primarily on the *Ashenfelder* case "In our view, the Township somewhat inflates the legislative delegation of police power under Section 702 [Section 65747]. An examination of Section 702 [of a second class township code] indicates that its language is most inappropriate and inadequate to evidence any intent on the part of the legislature to delegate to second class townships vast and extensive police powers; certainly no intent is manifest or evident to grant powers to second class townships to act in areas where the Commonwealth itself, through legislative enactments [Game Law], has provided regulation." 413 Pa. at 522, 198 A.2d at 516 (footnote omitted).

does not suggest that it intended to regulate the area of hunting through a patchwork of municipal regulations. The problem of hunting wild game with weapons must be uniform and comprehensive, else chaos, confusion and danger to the public would result. To permit each municipality to enact its own laws and regulations would create a lattice of additional rules as to when and where hunting would be permissible and would be in direct opposition to the legislative mandate. To permit each municipality to pass its own version of the Game Law would prevent the Game Commission from freely utilizing its experienced decision-making powers in determining the appropriate balance between the rights of hunters to hunt, the control of wild game and the safety of the citizens of this Commonwealth.

Order reversed.

### ORDER

AND NOW, this 15th day of October, 1987, the order of the Court of Common Pleas of Bucks County is reversed.