# DeAngelo Brothers Inc. v. Carbon County

C.P. of Carbon County, no. 01-1207.

*Joseph G. Ferguson,* for plaintiff.
*Steven R. Serfass,* for defendants.

NANOVIC, *J.,* November 28, 2001—At issue in this matter is whether Carbon County's chemical spraying ordinance, Ordinance no. 2001-01, is pre-empted by Pennsylvania's Pesticide Control Act of 1973, 3 P.S. §111.21 et seq., and, therefore, invalid in restricting the use of pesticides in the county by DeAngelo Brothers Inc.

DeAngelo Brothers is a licensed commercial pesticide applicator with contracts for the chemical control of vegetation along railroad rights-of-way within the county. DeAngelo Brothers is licensed to perform these applications by the Pennsylvania Department of Agriculture pursuant to the Act. The pesticides which DeAngelo Brothers uses to control the growth of vegetation are approved for use by the Pennsylvania Department of Agriculture.

On April 26, 2001, the county enacted Ordinance no. 2001-01. This ordinance, in substance, prohibits any

entity from chemical spraying within the boundaries of Carbon County. Specifically, section 4 of the ordinance provides:

"No entity shall apply, spray or utilize chemicals in any manner within the boundaries of Carbon County for the purpose of creating or maintaining a right-of-way, private road, path, clearing of brush or weeds, vegetation and the like." [1]

This ordinance, on its face and in its effect, prohibits DeAngelo Brothers from the use and application of pesticides in Carbon County.

On May 17, 2001, DeAngelo Brothers commenced suit in equity seeking to enjoin the enforcement of Ordinance no. 2001-01 against it and to have the ordinance declared invalid as being pre-empted by and inconsistent with the Act. The pleadings are closed and DeAngelo Brothers' motion for summary judgment is now before the court for consideration.

The Pesticide Control Act of 1973 was initially enacted by the Pennsylvania Legislature on March 1, 1974. The avowed purpose of the Act is "to regulate in the public interest, the labeling, distribution, storage, transportation, use, application, and disposal of pesticides." 3 P.S. §111.23. The term "pesticide" is defined in the Act as "any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest, and any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant." 3 P.S. §111.24(31).

---

1. Violation of the ordinance is a summary offense punishable by a fine of up to $1,000 for each day the violation continues.

The Act sets forth a comprehensive statewide statutory framework to deal with the regulation, registration, sale, transportation, distribution, notification and use of pesticides. The Act provides for the licensing of all businesses engaged in applying or contracting for the application of pesticides. 3 P.S. §111.35(a). The Act further provides for the registration of every pesticide distributed in this Commonwealth. 3 P.S. §111.25a(a).

The issue before the court is primarily one of law: Is the county's ordinance as applied to DeAngelo Brothers pre-empted by the Act and, hence, invalid and unenforceable? There is no genuine issue of material fact precluding summary judgment at this stage of the proceedings. The parties do not dispute that DeAngelo Brothers is a licensed pesticide applicator which performs such services in Carbon County.[2]

The matter of pre-emption is a judicially created principle based on the proposition that a municipality, as an agent of the state, cannot act contrary to the state. *Duff v. Township of Northampton,* 110 Pa. Commw. 277, 284, 532 A.2d 500, 503 (1987), *aff'd,* 520 Pa. 79, 550 A.2d

---

2. Accordingly, DeAngelo Brothers has legal standing to invoke this court's equitable powers to enjoin enforcement of the Carbon County chemical spraying ordinance, Ordinance no. 2001-01. See *City of Erie v. Northwestern Pennsylvania Food Council,* 14 Pa. Commw. 355, 363, 322 A.2d 407, 412 (1974). Further, section 7533 of the Declaratory Judgment Act, 42 Pa.C.S. §7533, authorizes a party "whose rights, status, or other legal relations are affected by a statute [or] municipal ordinance . . ." to commence an action in order to "have determined any question of construction or validity" of that ordinance and to "obtain a declaration of rights, status or other legal relations thereunder." 42 Pa.C.S. §7533. The court, moreover, may grant relief under the Declaratory Judgment Act "whenever necessary or proper . . ." 42 Pa.C.S. §7538(a).

1319 (1988). Recently, the Pennsylvania Supreme Court, quoting *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 380-81, 77 A.2d 616, 620 (1951), set forth in detail the standard for pre-emption:

"There are statutes which expressly provide that nothing contained therein should be construed as prohibiting municipalities from adopting appropriate ordinances, not inconsistent with the provisions of the act or the rules and regulations adopted thereunder, as might be deemed necessary to promote the purpose of the legislation. On the other hand, there are statutes which expressly provide that municipal legislation in regard to the subject covered by the state Act is forbidden. Then there is a third class of statutes which, regulating some industry or occupation, are silent as to whether municipalities are or are not permitted to enact supplementary legislation or to impinge in any manner upon the field entered upon by the state; in such cases the question whether municipal action is permissible must be determined by an analysis of the provisions of the act itself in order to ascertain the probable intention of the legislature in that regard. It is of course self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute: *Bussone v. Blatchford,* 164 Pa. Super. 545, 67 A.2d 587 [(1949)]. But, generally speaking 'it has long been the established general rule, in determining whether a conflict exists between a general and local law, that where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation with subordinate power to act in the matter may make such additional regulations in aid and furtherance of the purpose of the gen-

eral law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable.' *Natural Milk Producers Association v. City and County of San Francisco,* 20 Cal.2d 101, 109, 124 P.2d 25, 29 [(1942)]." *Mars Emergency Medical Services Inc. v. Township of Adams,* 559 Pa. 309, 740 A.2d 193, 195 (1999). (footnotes omitted)

Further,

"The state is not presumed to have pre-empted a field merely by legislating in it. The General Assembly must clearly show its intent to pre-empt a field in which it has legislated. *Retail Master Bakers Association v. Allegheny County,* 400 Pa. 1, 161 A.2d 36 (1960). See also, *United Tavern Owners v. Philadelphia School District,* 441 Pa. 274, 272 A.2d 868 (1971) (opinion announcing the judgment of the court). The test for pre-emption in this Commonwealth is well established. Either the statute must state on its face that local legislation is forbidden, or 'indicate [] an intention on the part of the legislature that it should not be supplemented by municipal bodies.' *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 381, 77 A.2d 616, 620 (1951). See also, *Harris-Walsh Inc. v. Dickson City Borough,* 420 Pa. 259, 216 A.2d 329 (1966). If the General Assembly has pre-empted a field, the state has retained all regulatory and legislative power for itself and no local legislation is permitted." *Duff v. Township of Northampton,* 110 Pa. Commw. 277, 285-86, 532 A.2d 500, 503 (1987), *aff'd,* 520 Pa. 79, 550 A.2d 1319 (1988).

Still further,

"Pre-emption analysis calls for the answer initially to whether the field or subject matter in which the ordi-

nance operates, including its effects, is the same as that in which the state has acted. If not, then pre-emption is clearly inapplicable. An affirmative answer calls for a further search for it is not enough that the legislature has legislated upon the subject. The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said with confidence that the legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act. . . .

"Pertinent questions in determining the pre-emption issues are: (1) Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the legislature has permitted? (2) Was the state law intended expressly or impliedly to be exclusive in the field? (3) Does the subject matter reflect a need for uniformity? (4) Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation? (5) Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the legislature?" *Duff, supra* at 287-88, 532 A.2d at 504-505.

The issue of pre-emption is addressed explicitly in the Pesticide Control Act. Section 37(b) of the Act, 3 P.S. §111.57(b), contains the following relevant language:

"(b) This act and its provisions are of statewide concern and occupy the whole field of regulation regarding the registration, sale, transportation, distribution, notification of use, and use of pesticides to the exclusion of all local regulations. Except as otherwise specifically pro-

vided in this act, no ordinance or regulation of any political subdivision or home rule municipality may prohibit or in any way attempt to regulate any matter relating to the registration, sale, transportation, handling or use of pesticides, if any of these ordinances, laws or regulations are in conflict with this Act."

A critical reading of section 37(b) of the Act reveals an ambiguity in the standard of pre-emption to be applied. While the first sentence of this section states a clear legislative intention to pre-empt any local legislation with respect to the subject of pesticides, the second sentence adopts a standard of pre-emption deferential to supplementary local legislation provided such legislation is not inconsistent with the provisions of the Act, or the rules and regulations adopted thereunder. Given this ambiguity and the reluctance of the Pennsylvania Supreme Court to find pre-emption of local legislation by state statutes, the more relaxed version of pre-emption permissive of complementary local legislation should be the test when measuring local legislation against the Pesticide Control Act. 1 Pa. C.S. §1934; *Mars Emergency Medical Services Inc. v. Township of Adams,* 559 Pa. 309, 740 A.2d 193, 195 (1999). Under either standard, local legislation contradictory to or inconsistent with the Act is invalid.[3]

---

3. In *Borough of McAdoo v. Lawn Specialties,* 120 Pa. Commw. 120, 547 A.2d 1297 (1988), the only appellate case discussing the pre-emptive effects of the Pesticide Control Act on local legislation, the Commonwealth Court appears to have concluded that the legislature's intention in the Pesticide Control Act was to exclusively occupy the entire field of legislation on this topic and, therefore, to prohibit even complementary local legislation not inconsistent with the Act. 120 Pa. Commw. at 124, 547 A.2d at 1299. In *Borough of McAdoo,* the Commonwealth Court held that a borough ordinance which required a pro-

In the present case, the county's ordinance seeks far more than to regulate the use of pesticides or the licensing of pesticide applicators. The ordinance imposes a blanket ban on the use of all chemicals within the county for the purpose of creating or maintaining a right-of-way, private road, path, or the clearing of brush, weeds or vegetation. Included within the ambit of this prohibition is the use of pesticides for such purposes. The ordinance makes no exception for the use of pesticides or the services performed by businesses regulated by the Pennsylvania Department of Agriculture pursuant to the Pesticide Control Act.

The breadth of the ban imposed by the county's ordinance contradicts the very premise of the Pesticide Control Act—that pesticides are valuable to the protection of man and the environment if safely and intelligently regulated—and defeats its purpose. 3 P.S. §111.23. For all intents and purposes, the county's ordinance prohibits any use of pesticides regardless of by whom used for the purpose of creating or maintaining rights-of-way, private roads, paths, or the clearing of brush, weeds or vegetation. Finding this conflict to exist, this court has no choice but to declare the ordinance as applied to DeAngelo Brothers invalid and unenforceable.

In making this decision, the court does not question the good faith or sincerity of the county's, and its public officials', intentions underlying the enactment of its ordinance. The ordinance explicitly includes among its

fessional lawn care service to obtain a local license before applying herbicides, pesticides and insecticides to lawns of its residential and commercial customers was pre-empted by the licensing provisions of the Act.

declared purposes the protection of watersheds and bodies of water in the county from chemical pollution and the maintenance of the aesthetic beauty of the county.

This court is not unaware of the hidden dangers that may result from chemical use and which surface only years later. The protection of water tables and water reservoirs in a county many of whose residents are dependent upon private on-site wells for the supply of water for human consumption is an understandable concern of local public officials. Nor is the court unaware of the unsightly blight which results from the irresponsible and indiscriminate use of pesticides along roads and rights-of-way within the county and which scars the natural beauty of mountain laurel and other native vegetation within the county. Considerations of this type vary from county to county and may well argue in favor of the desirability of allowing counties to implement regulations complementary to those of the Pesticide Control Act or, at a minimum, highlight the need for the Pesticide Control Act and its supporting rules and regulations to differentiate between the rural and metropolitan counties of this Commonwealth.

The argument for permitting local legislation to accommodate local differences and matters of local concern must be balanced against those subjects inherently in need of uniform treatment and those matters of general public interest which necessarily require an exclusive state policy. This balancing, however, is a matter of legislative prerogative and discretion and not within the power of this court to invade. Instead, the county's efforts are more appropriately directed at the state legislature to amend the Pesticide Control Act to permit greater

local authority of counties in the regulation of the use of pesticides within their boundaries.

For the foregoing reasons, we enter the attached order:

## ORDER

And now, November 29, 2001, upon consideration of plaintiff's motion for summary judgment, defendants' answer thereto, and the briefs of counsel, and after oral argument thereon, it is hereby ordered and decreed as follows:

(1) Plaintiff's motion for summary judgment is hereby granted.

(2) Carbon County's chemical spraying ordinance, Ordinance no. 2001-01, is hereby declared to be in conflict with Pennsylvania's Pesticide Control Act of 1973, 3 P.S. §111.21 et seq. and is therefore invalid and unenforceable to the extent it purports to regulate plaintiff's use of pesticides within Carbon County.

(3) The County of Carbon and its officers, agents and employees are hereby enjoined from enforcing or attempting to enforce any of the provisions of Ordinance no. 2001-01 against plaintiff's application of pesticides within Carbon County.

(4) The prothonotary is directed to refund to plaintiff the security previously posted by plaintiff in the amount of $500.