City of Erie, Appellant, *v.* Northwestern Pennsylvania Food Council, Appellee.

356

Argued May 8, 1974, before President Judge Bow-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Angelo P. Arduini,* Assistant City Solicitor, for appellant.

*William C. Sennett,* with him *Paul F. Curry,* and *Knox, Graham, Pearson, McLaughlin & Sennett, Inc.,* for appellee.

OPINION BY JUDGE MENCER, July 22, 1974:

The City of Erie enacted Ordinance No. 22-1972 which attempts to regulate the packaging and labeling of meats offered for sale at retail within the City of Erie. The provisions of Section 2 of this ordinance makes it unlawful to sell or offer for sale at retail any sealed, prepackaged, unprocessed or untreated fresh-cut meat or frozen meat, unless the packaging thereof is colorless and transparent on all sides, or unless at least 70% of the packaging is transparent to expose the bottom of the meat while the top is completely visible exclusive of labeling, which shall not occupy more than 10% of one side of the package. "Chopped meat" and "ground meat" are specifically excluded by the provisions of the ordinance.

The Northwestern Pennsylvania Food Council, having as members locally owned food markets and four major food chain stores operating in the City of Erie, commenced an action in equity seeking an injunction against the City of Erie to prevent it from enforcing the ordinance here in question and to have the ordinance declared unlawful. After a hearing, the Court of Common Pleas of Erie County, by order of December 6, 1972, granted to the plaintiff the relief it sought. This appeal followed the entry of that order, and we affirm.

We are confronted with the question of whether the City of Erie's Ordinance No. 22-1972 is in such conflict with the laws of the Commonwealth of Pennsylvania as to be invalid.

The basic statement of Pennsylvania preemption law is found in *Western Pennsylvania Restaurant Association v. Pittsburgh*, 366 Pa. 374, 77 A. 2d 616 (1951). This case enunciated the appropriate criteria for determining whether the Commonwealth, to the exclusion of its political subdivisions, has preempted by legislation the regulation of certain activities: "There are statutes which expressly provide that nothing contained therein should be construed as prohibiting municipalities from adopting appropriate ordinances, not inconsistent with the provisions of the act or the rules and regulations adopted thereunder, as might be deemed necessary to promote the purpose of the legislation. On the other hand there are statutes which expressly provide that municipal legislation in regard to the subject covered by the State act is forbidden. Then there is a third class of statutes which, regulating some industry or occupation, are silent as to whether municipalities are or are not permitted to enact supplementary legislation or to impinge in any manner upon the field entered upon by the State; in such cases the question whether municipal action is permissible must be determined by an analysis of the provisions of the act itself in order to ascertain the probable intention of the legislature in that regard. It is of course self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute: Bussone v. Blachford, 164 Pa. Superior Ct. 545, 67 A. 2d 587. But, generally speaking, 'it has long been the established general rule, in determining whether a conflict exists between a general and local law, that where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation with subordinate power to act in the matter may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate

to the necessities of the particular locality and which are not in themselves unreasonable.' Natural Milk Producers Association v. City and County of San Francisco, 20 Cal. 2d 101, 109, 124 P. 2d 25, 29. Thus it has been held in our own Commonwealth that municipalities in the exercise of the police power may regulate certain occupations by imposing restrictions which are in addition to, and not in conflict with, statutory regulations [citing authorities]. But if the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid [citing authorities]." 366 Pa. at 380-81, 77 A. 2d at 619-20 (footnotes omitted).

Another expression of these principles is that of Justice MUSMANNO in the vivid, stylistic language of *Department of Licenses and Inspections v. Weber,* 394 Pa. 466, 468-69, 147 A. 2d 326, 327 (1959) :[1] "Of course, it is obvious that where a statute specifically declares it has planted the flag of preemption in a field, all ordinances on the subject die away as if they did not exist. It is also apparent that, even if the statute is silent on supersession, but proclaims a course of regulation and control which brooks no municipal intervention, all ordinances touching the topic of exclusive control fade away into the limbo of "innocuous desuetude.' However, where the Act is silent as to monopolistic domination and a municipal ordinance provides for a localized procedure which furthers the salutary scope

---

[1] More recent cases dealing with state preemption are *United Tavern Owners of Philadelphia v. Philadelphia School District,* 441 Pa. 274, 272 A. 2d 868 (1971) ; *Lakelands Racing Association, Inc. v. Fairview Township,* 18 Pa. Commonwealth Ct. 561, 320 A. 2d 391 (1974) ; *Southeastern Pennsylvania Transportation Authority v. Board for the Assessment and Revision of Taxes for Delaware County,* 13 Pa. Commonwealth Ct. 199, 319 A. 2d 10 (1974).

of the Act, the ordinance is welcomed as an ally, bringing reinforcements into the field of attainment of the statute's objectives."

Against this background we consider the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, P. L. 184, No. 62 (Act), 53 P.S. §1-101 et seq., which became effective on April 13, 1972.[2] Section 302(b) of this Act, 53 P.S. §1-302(b), reads: "(b) No municipality shall (i) engage in any proprietary or private business except as authorized by the General Assembly, (ii) exercise powers contrary to, or in limitation or enlargement of powers granted by acts of the General Assembly which are applicable in every part of the Commonwealth, (iii) be given the power to diminish the rights or privileges of any former municipal employe entitled to benefits or any present municipal employe in his pension or retirement system, (iv) enact or promulgate any ordinance or regulation with respect to definitions, sanitation, safety, health, standards of identity or labeling pertaining to the manufacture, processing, storage, distribution and sale of any foods, goods or services subject to any Commonwealth laws or regulations unless such municipal ordinance or regulation is uniform in all respects with such Commonwealth laws and regulations. Nothing herein contained shall be construed to in any way affect the power of any municipality to enact and enforce ordinances relating to building codes or any other safety, sanitation or health regulation pertaining thereto, nor (v) enact any provision inconsistent with any statute heretofore enacted by the General Assembly affecting the rights, benefits or working conditions of any employe of a political subdivision of the Commonwealth."

We are in accord with the court below that this provision of the Act is applicable to and restricts the

---

[2] City of Erie Ordinance No. 22-1972 was passed on May 17, 1972 and approved by the Mayor of Erie on May 19, 1972.

lawmaking power of the City of Erie. We conclude that Section 302(b)(iv), 53 P.S. §1-302(b)(iv), expressly prohibits the enactment and enforcement of Ordinance No. 22-1972 of the City of Erie because this ordinance is not uniform in all respects with those Commonwealth laws and regulations relating to health, standards of identity or labeling pertaining to the manufacture, processing, storage, distribution and sale of any foods, goods or services. This conclusion is buttressed by that portion of Section 302(b)(iv) which expressly permits municipalities to enact and enforce ordinances relating to building codes. Unless the previous portion of Section 302(b)(iv) constitutes an expression of legislative intention that it should not be supplemented by municipal bodies, there is no reason for this specific exception restricted to municipal building codes.

In addition, an examination of relevant Commonwealth statutes and regulations conclusively demonstrates that the Commonwealth has preempted the field in question.

We commence our analytical examination with a consideration of the Weights and Measures Act of 1965, Act of December 1, 1965, P. L. 988, as amended, 76 P.S. §100-1 et seq. Section 22 of this Act, 76 P.S. §100-22, provides in part that ". . . any commodity in package form . . . shall bear on the outside of the package such definite, plain and conspicuous declarations of (1) the identity of the commodity in the package unless the same can easily be identified through the wrapper or container; (2) the net quantity of the contents in terms of weight, measure or count; and (3) in the case of any package kept, offered or exposed for sale or sold any place other than on the premises where packed, the name and place of business address of the manufac-

turer, packer or distributor as may be prescribed by regulation issued by the Attorney General. . . ."[3]

Section 24(a), 76 P.S. §100-24(a), provides that "[n]o commodity in package form shall be wrapped nor shall it be in a container so made, formed or filled as to mislead the purchaser as to the quantity of the contents of the package."[4]

Likewise, packaging and labeling requirements are found in the Pennsylvania General Food Law, Act of May 13, 1909, P. L. 520, as amended, 31 P.S. §1 et seq. See Section 4, 31 P.S. §4, and regulations promulgated under the authority of this Act as set forth in 7 Pa. Code §45.31.

In addition, we note the provisions of the Pennsylvania Meat and Poultry Hygiene Law of 1968, Act of July 9, 1968, P. L. 304, 31 P.S. §483.1 et seq. The provisions of this Act became applicable to retail stores on February 1, 1973 by virtue of action by the Secretary of Agriculture pursuant to the authority contained in Section 2 of the Act, 31 P.S. §483.2. 3 Pa. B. 188. Section 16 of this Act, 31 P.S. §483.16, specifically deals with the labeling and marking of any meat, meat food product, or meat by-product.

These statutes evidence the legislative intent to preempt the field of packaging and labeling of meat products. Also, the provisions of the City of Erie ordinance do not comply uniformly in all respects with those Commonwealth laws and regulations pertaining to packaging and labeling meat products, a conclusion readily verified by a comparison of the regulations found at 7

---

[3] The regulations issued specifically deal with the packaging of commodities that are produced or distributed for sale for consumption by individuals. 70 Pa. Code §§23.1-23.109.

[4] See the Unfair Trade Practices and Consumer Protection Law, Act of December 17, 1968, P. L. 1224, 73 P.S. §201-1 et seq., designed to prevent the misrepresentation of goods sold to the consumer.

Pa. Code §§1.242, 1.256, 1.270, and 1.271 with the provisions of Section 2 of the Erie ordinance.

We can only come to a determination that (1) Section 302(b) of the Home Rule Charter and Optional Plans Law of 1972 restricts the City of Erie's power to enact Ordinance No. 22-1972 which is not uniform in all respects with those Commonwealth laws and regulations applicable to packaging and labeling meat products and that (2) the Commonwealth of Pennsylvania has, by statutes and regulations, preempted and occupied the meat packaging and labeling field.[5]

The City of Erie contends that this action in equity seeking injunctive relief was improper since plaintiff had an adequate remedy at law and that it was premature since it predated any enforcement of the ordinance. These same contentions were raised and answered in *Harris-Walsh, Inc. v. Dickson City Borough,* 420 Pa. 259, 216 A. 2d 329 (1966), where it was stated:

"Initially, we must consider whether the court below, sitting as a court of equity, had *jurisdiction* to entertain this action to restrain the enforcement of this ordinance. . . .

"If at law there exists a remedy, complete and adequate in nature, equity will not assume jurisdiction; absent such a remedy, equity may act. A remedy at law may be provided under the statute or the ordinance the validity of which is attacked, but, unless such statute or ordinance provides a remedy *adequate* 'to the task of resolving plaintiffs' objections,' the mere existence of such remedy will not preclude the assumption of equita-

---

[5] The lower court's apt observation in this regard is of some significance: "I conclude that although I hold the State has occupied the field in meat processing and packaging, it would be most absurd if they had not done so. If the City of Erie could regulate meat packages, so could every borough and township in Pennsylvania. Reduced to absurdity, there could be hundreds of different meat package requirements throughout Pennsylvania."

ble jurisdiction: Bliss Excavating Co. v. Luzerne County, 418 Pa. 446, 451, 211 A. 2d 532.

"In the case at bar, does an adequate remedy at law exist? The only section of this ordinance which might be construed as remedy-providing is §8 which provides criminal penalties for violation of the ordinance but such remedy, which would require subjection to a criminal prosecution, is not of such adequacy as to oust equity of jurisdiction. No other remedy would be available to *adequately* meet this challenge to the validity of the ordinance." 420 Pa. at 263-64, 216 A. 2d 331 (emphasis in original) (footnotes omitted).

Lastly, the City of Erie asserts that the lower court erred in granting injunctive relief in the absence of evidence sufficient to establish immediate and irreparable harm to the plaintiff. This traditional prerequisite to the issuance of an injunction is not applicable where as here the Legislature declares certain conduct to be unpermitted and unlawful. For one to undertake and pursue such statutorily prohibited conduct constitutes irreparable injury which is the proper subject of injunctive relief. *Pennsylvania Public Utility Commission v. Israel,* 356 Pa. 400, 52 A. 2d 317 (1947).

Order affirmed.