**MITCHELL'S BAR & RESTAURANT, INC. and 639 Smithfield Corp., d/b/a Smithfield Cafe**

v.

**ALLEGHENY COUNTY and Daniel A. Onorato, as Chief Executive of Allegheny County, and Allegheny County Council, Appellants.**

**Mitchell's Bar & Restaurant, Inc., and 639 Smithfield Corp., d/b/a Smithfield Cafe, Appellants**

v.

**Allegheny County and Daniel A. Onorato, as Chief Executive of Allegheny County, and Allegheny County Council.**

Commonwealth Court of Pennsylvania.

Argued March 6, 2007.

Decided May 22, 2007.

John F. Cambest, Robert Burgoyne, and Rebecca E. Morris–Chatta, Pittsburgh, for appellants.

John E. Iole, Pittsburgh, for appellee.

BEFORE: COLINS, Judge, COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.[1]

■ This case involves whether the Commonwealth's Clean Indoor Air Act,[2] which regulates indoor smoking in public places, preempts, meaning prevents, Allegheny County from subsequently enacting an ordinance prohibiting indoor smoking in public places in Allegheny County (Ordinance).[3] Two Pittsburgh restaurants claiming to be impacted by the Ordinance, Mitchell's Bar and Restaurant, Inc. and 639 Smithfield Corp., doing business as Smithfield Cafe, (collectively referred to here as the Restaurants), filed an action in the Court of Common Pleas of Allegheny County (trial court) seeking: (1) a declaratory judgment declaring the Ordinance ultra vires;[4] and (2) to permanently enjoin the County from enforcing the Ordinance. The trial court found that the Ordinance was not ultra vires. The trial court also denied permanent injunctive relief, although it granted an injunction to prevent enforcement of the Ordinance through April 30, 2007, at 11:59 p.m.

---

1. This case was assigned to the opinion writer on May 8, 2007.

2. In particular Sections 10.1 and 15.1 of the [Fire and Panic Act] (Act) Act of April 27, 1927, P.L. 465, added by Section 2, of the Act of December 21, 1988, P.L. 1315, 35 P.S. §§ 1230.1, 1235.1.

3. "If the General Assembly has preempted a field, the state has retained all regulatory and legislative power for itself and no local legislation is permitted" in that field. *Council of Middletown Tp., Delaware County v. Benham,* 514 Pa. 176, 181, 523 A.2d 311, 313 (1987). Our Pennsylvania Supreme Court has noted that:

> The test for preemption in this Commonwealth is well established. Either the statute must state on its face that local legislation is forbidden, or "indicate[] an intention on the part of the legislature that it should not be supplemented by municipal bodies." *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 381, 77 A.2d 616, 620 (1951). *See also Harris–Walsh, Inc. v. Dickson City Borough,* 420 Pa. 259, 216 A.2d 329 (1966). *Western Pennsylvania Restaurant Association, supra.*

> *Benham,* 514 Pa. at 181, 523 A.2d at 313.

4. "Ultra vires" is defined as "[u]nauthorized; beyond the scope of power allowed or granted by a corporate charter or by law." Black's Law Dictionary 1559 (8th ed.2004).

There are three issues on appeal: (1) whether certain provisions of the Commonwealth's Clean Indoor Air Act were effectively repealed by the Legislature; (2) if they were not repealed, whether these provisions preempt local regulations, thereby rendering the County's Ordinance ultra vires; and (3) if the Ordinance is ultra vires, whether the Restaurants are entitled to injunctive relief. After first setting forth the facts, we address these issues in turn.

The statutory sections at issue in this appeal, Sections 10.1 and 15.1 of the Act of April 27, 1927, P.L. 465(Act),[5] arise from amendments the General Assembly made to several sections of the Fire and Panic Act by the Act of December 21, 1988, P.L. 1315. Sections 10.1 and 15.1 are commonly referred to as the "Commonwealth Clean Air Act."

■ "The purpose of the [Commonwealth] Clean Indoor Air Act is to protect public health and to promote the comfort of all persons within public places, at public meetings and in certain workplaces by regulating and controlling smoking." *Quinn, Gent, Buseck and Leemhuis, Inc. v. Unemployment Compensation Board of Review,* 147 Pa.Cmwlth. 141, 606 A.2d 1300, 1304 (1992); *see also* Section 10.1(a) of the Act, 35 P.S. § 1230.1(a) ("The purpose of this section is to protect the public health and to provide for the comfort of all parties by regulating and controlling smoking in certain public places and at public meetings and in certain workplaces.") The Commonwealth Clean Indoor Air Act establishes a broad application of its provisions to Commonwealth municipalities, and Section 15.1(a) specifies that "[t]his act shall *preempt and supersede* any local ordinance or rule concerning the subject matter of sections 3.5 and 10.1 of this act."[6] 35 P.S. § 1235.1(a) (emphasis added) (footnote omitted). Section 10.1 provides that all public places, including restaurants that seat 75 or more people, must provide separate smoking and non-smoking sections, and provides rules for implementing these sections. Section 10.1 also exempts restaurants seating less than 75 persons from having to maintain a non-smoking section, but leaves it within the restaurant's discretion whether to maintain a non-smoking section. For these exempt restaurants, Section 10.1 imposes certain requirements if they choose to have a non-smoking section, and different requirements if they choose to not have a non-smoking section.[7]

---

**5.** As noted, Section 2 of the Act became Sections 10.1 and 15.1 of the Fire and Panic Act, 35 P.S. §§ 1230.1, 1235.1. Although we will reference the Commonwealth Clean Indoor Air Act, we will refer to the sections by their designation in the Fire and Panic Act.

**6.** This section provides:
  (a) This act shall preempt and supersede any local ordinance or rule concerning the subject matter of sections 3.5 and 10.1 of this act.
  (b) This act shall preempt and supersede any local ordinance or rule concerning the subject matter of section 10.1 of this act except that:
  (1) The provisions of section 10.1 of this act shall not apply to local rules or ordinances concerning the subject matter of section 10.1 of this act which have been adopted by cities of the second class and were in effect prior to September 1, 1988.
  (2) In the event that the local rule or ordinance is amended, suspended, rescinded or rendered, in whole or in part, ineffective by a court decision, the exemption shall not apply; and the city of the second class shall be subject to the provisions of section 10.1 of this act.
  35 P.S. § 1235.1.

**7.** This section provides, in pertinent part that:
  (a) The purpose of this section is to protect the public health and to provide for the comfort of all parties by regulating and controlling smoking in certain public places and at public meetings and in certain workplaces.

On October 4, 2006, the County, operating under the Allegheny County's Home Rule Charter, adopted the Ordinance, No. 23–06–OR, which made several amendments to the County's "Health Department Regulations." Among these amendments was a prohibition of all smoking in any public place in Allegheny County. In relevant part, the Ordinance provides that:

(b) As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Bar areas"** means those areas which are devoted to the serving of alcoholic beverages for consumption by guests on the premises and in which the serving of food is only incidental to the consumption of such beverages.

**"Public meetings"** means all meetings open to the public pursuant to the act of July 3, 1986 (P.L. 388, No. 84), known as the "Sunshine Act."

**"Public place"** means either of the following:

(1) An enclosed, indoor area owned or operated by a State or local governmental agency and used by the general public or serving as a place of work for public employes or a meeting place for a public body, including an office, educational facility, health facility, auditorium, arena, meeting room or public conveyance.

(2) An enclosed, indoor area which is not owned or operated by a State or local governmental agency, which is used by the general public and which is any of the following:

* * * *

(viii) A restaurant.

* * * *

**"Restaurant"** means any eating establishment which offers food for sale to the public.

**"Smoking"** means the carrying by a person of a lighted cigar, cigarette, pipe or other lighted smoking device.

**"Workplace"** means an enclosed, indoor area serving as a place of employment, occupation, business, trade, craft or profession.

(c) No person shall smoke in an area designated nonsmoking by the proprietor or person in charge in a public place or at a public meeting.

(d) The following places shall be exempt from this section:

(1) Private social functions where the area utilized is under the control of the sponsor and not the proprietor.

(2) Factories, warehouses and similar places of work not frequented by the general public.

(3) Restaurants seating fewer than seventy-five (75) persons.

(4) Bar areas in a liquor licensee establishment.

(5) Areas in public places commonly referred to as lobbies and hallways.

(6) Hotel and motel rooms.

(7) Retail stores, the primary business of which is the sale of tobacco or tobacco-related products.

(e) The regulation of smoking in restaurants with seventy-five (75) or more seats shall be governed by the following:

(1) Restaurants shall provide for their patrons smoking and nonsmoking areas reasonably calculated to address the needs of their clientele, the size of which may be increased or decreased, by the proprietor or person in charge, according to need.

(2) Restaurants shall make reasonable efforts to prevent smoking in the designated nonsmoking section by:

(i) Posting appropriate signs which are readily visible. The color, size and placement of the signs shall be left to the discretion of the proprietor or person in charge in keeping with the decor or aesthetics of the establishment.

(ii) Arranging seating so that smokers and nonsmokers are placed in contiguous groupings.

(iii) Asking smokers to refrain from smoking in the nonsmoking areas.

(f) The regulation of smoking in restaurants with fewer than seventy-five (75) seats shall be left to the discretion of the proprietor, provided that:

(1) Restaurants which choose not to provide a nonsmoking area nor develop a nosmoking policy based upon customer preference shall post notice of such lack of policy at each entranceway.

(2) Restaurants which choose to provide a nonsmoking area shall develop a policy in accordance with subsection (e).

35   P.S. § 1230.1.

No person shall smoke or possess a lit tobacco smoke producing instrument in any of the following locations . . . :

(1) In any Enclosed Area to which the general public is invited or in which the general public is routinely permitted, including, but not limited to:

\* \* \* \*

(iv) Food or Beverage Establishments

(Ordinance Section 2, Health Department Regulations § 880–2(a)(1)(iv).) The term "Food or Beverage Establishment" is defined to include "[a]ny restaurant, bar . . . or any other eating or drinking establishment which gives or offers for sale food or drink to the public . . . for consumption on or off the premises . . . ." (Ordinance Section 2, Health Department Regulations § 880–1(b).) The Restaurants involved in the present litigation are both located in the City of Pittsburgh, which is itself located in Allegheny County. Accordingly, the Ordinance would prevent the Restaurants from allowing smoking within them.

The Restaurants filed a Complaint seeking a declaratory judgment that Section 10.1 of the Act provides a complete regulatory scheme regarding smoking in public places, specifically restaurants and bars, and that Section 15.1 of the Act preempts all attempts by Commonwealth municipalities to regulate smoking in public places. The Restaurants also sought permanent injunctive relief in this Complaint and filed a motion for preliminary injunctive relief, both requests seeking an injunction against the County from enforcing the Ordinance.

The trial court held one hearing to address all matters, including the declaratory judgment action, as well as the requests for both preliminary and permanent injunctive relief. On December 22, 2006, the trial court issued an order denying the Restaurants' request for a declaratory judgment, but granting the injunctive relief for a limited period to terminate on April 30, 2007 at 11:59 p.m. The Restaurants appealed the denial of the request for declaratory judgment and appealed the trial court's decision as to injunctive relief, arguing that the injunction should be permanent.

I.

The first issue we must address is whether the General Assembly effectively repealed section 15.1 which contains the preemption provision. In November 1999, the General Assembly adopted The Pennsylvania Construction Code Act (Construction Code), Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210.101– 7210.1103, which included a provision that, when effective, would *repeal* Section 15.1 (the Repealer).[8] The effect of this provision would be to eliminate the section of the Act which provides that Section 10.1 would "preempt and supersede" local regulations in this area. However, the legislature attached conditions to the Repealer, specifying that the Repealer would not become effective until ninety days *after* the publication of regulations implementing the Construction Code.[9] The regulations

---

**8.** *Section 1102 of the Construction Code, 35 P.S. § 7210.1102 contains the repealer language. It provides that:*

(a)**Absolute.**—The following acts and parts of acts are repealed:
Sections 15.1 of the act of April 27, 1927 (P.L. 465, No. 299), referred to as the Fire and Panic Act.

35 P.S. § 7210.1102.

**9.** Pursuant to Section 1103 of the Construction Code, three sections and portions of a fourth section of the Construction Code were to take effect immediately; however, Section 1102 of the Construction Code was *not* one of those taking immediate effect. Section 1103 provided that "[t]he remainder of this act"

were not published for several years, until 2004. In the interim, in 2000, approximately four years *before* the publication of the regulations implementing the Construction Code (and one year after the General Assembly had passed the Repealer), the General Assembly *repealed the Repealer*.[10]

■ Section 1977 of the Statutory Construction Code, 1 Pa.C.S. § 1977, sets out the interpretive rule to apply when a statute has been repealed by another statute which is, itself, later repealed. It states that, "[t]he repeal of a repealing statute shall not be construed to revive the statute *originally repealed*." (emphasis added). By its terms, this section applies to a statute that was "originally repealed" by another statute. Once a statute has been effectively repealed, the repealed provision cannot be revived. However, this case is different because the Repealer never became effective: its effective date was contingent on the publication of the regulations. Thus, although the General Assembly did adopt an act that *would have* repealed the preemption provision if it had become effective, that repeal never became effective and the preemption provision was not "repealed." In other words, until the date upon which the Repealer became effective, the preemption provision remained in effect. Once the General Assembly repealed the ineffective repeal, the status quo simply continued.

This conclusion is consistent with precedent from our Pennsylvania Supreme Court, which has held that where a repealer statute does not become effective, the earlier statute remains in force. *Mazurek v. Farmers' Mutual Insurance Company of Jamestown*, 320 Pa. 33, 37, 181 A. 570, 572 (1935) (holding that a statute that, if valid, would repeal an earlier statute, is found to be unconstitutional, and therefore invalid, the earlier statute remains in force.) We note other jurisdictions faced with a similar situation have reached similar conclusions. *See, e.g., Opinion of the Justices*, 357 So.2d 145, 147 (Ala.1978) (quoting from 73 Am.Jur.2d *Statutes* § 426 (1974) to hold that "where the repealing act is repealed before it takes effect, its repeal does not affect the original act in any way, it never having actually become inoperative.")

■ We also agree with the Restaurants that, if this Court were to conclude that the Repealer was effective from the date of enactment, we would be designating the effective date to be earlier than the date specifically mandated by the legislature, and essentially engaging in a legislative act. We, therefore, conclude that, here, the repeal of an as-yet ineffective repeal results in the continued vitality of a statutory provision.

Because Section 15.1 remains valid we, therefore, address whether Sections 15.1 and 10.1 preempt local regulation of indoor smoking.

## II.

■ Under the doctrine of preemption, "[a] municipality may not exercise power

including Section 1102 "shall take effect 90 days following publication of notice in the Pennsylvania Bulletin that the regulations required by this act have been finally adopted." 35 P.S. § 7210.1103(2).

**10.** Act of December 20, 2000, P.L. 944, No. 128, § 2, imd. effective. Sections 2 and 3 of this Act provided that:

Section 2. As much of section 1102(a) of the act of November 10, 1999 (P.L. 491, No. 45), known as the Pennsylvania Construction Code Act, as repeals section 15.1 of the act is repealed.
Section 3. This act shall take effect as follows:
(1) The following provisions shall take effect immediately:
(i) Section 2 of this act.

or authority in violation of the preemption doctrine, which provides that when the legislature has preempted a field the state has retained all regulatory and legislative power for itself and therefore prohibits local legislation in that area." *Nutter v. Dougherty*, 921 A.2d 44, 56, (Pa.Cmwlth. 2007) (en banc).

Section 15.1, in clear language, provides that "[t]his act shall *preempt* and *supersede* any local ordinance or rule concerning the subject matter of section[] ... 10.1 of this act." 35 P.S. § 1235.1(a) (emphasis added). Section 10.1 was titled "Clean Indoor Air" and, by its own language, the section's subject matter was the "regulating and controlling [of] smoking in certain public places ..." for "[t]he purpose of ... protect[ing] the public health and ... provid[ing] for the comfort of all parties...." 35 P.S. § 1230.1(a). Section 10.1(b) defines public place to include "a restaurant," which is itself defined to include "any eating establishment which offers food for sale to the public." 35 P.S. § 1230.1(b)(2)(viii). This clear language establishes a clear legislative intent to regulate the subject matter of smoking within restaurants.

The subject matter of Section 10.1 also shows that the legislature meant it to apply, in one way or another, to all restaurants. Section 10.1 does distinguish restaurants based on the amount of seating they provide, and requires that those providing seating for seventy-five persons or more must provide a non-smoking section. 35 P.S. § 1230.1(e). Although restaurants providing seating for 75 persons or less are identified as being "exempt" from the requirement to provide a non-smoking section, the Act is not ·silent as to these "exempt restaurants," but specifically

vests discretion in the proprietor to decide whether to provide a non-smoking section. 35 P.S. § 1230.1(d)(3). Regardless of whether the "exempt" restaurants choose to have a non-smoking section or not, they are still subject to certain requirements. If the proprietor chooses not to provide a non-smoking section, he is required to post notice of that decision at the entranceway of the restaurant. Those proprietors that choose to have a non-smoking section "shall develop a policy in accordance with" the requirements imposed on non-exempt restaurants. 35 P.S. § 1230.1(f)(2). The requirements imposed on non-exempt restaurants include posting signs to identify the different sections, arranging the seating so that smokers and non-smokers are grouped contiguously, and "[a]sking smokers to refrain from smoking in the nonsmoking areas." 35 P.S. § 1230.1(e)(2). Additionally, the sizes of the smoking and non-smoking sections are to be "reasonably calculated to address the needs of [the restaurant's] clientele ... the size of which may be increased or decreased, by the proprietor or person in charge, according to need." 35 P.S. § 1230.1(e)(1). Thus, while the "exempt" restaurants are not required to provide a non-smoking section, they are not exempt from the requirements of Section 10.1 [11]

█ The impact of this language is to establish that the General Assembly, by using the terms "preempt and supersede" and by providing regulation as to all restaurants, expressly intended to reserve all regulatory and legislative power for itself and to prohibit local legislation as to the subject matter of indoor smoking in restaurants.

█ Although the County is a home rule municipality and, therefore, has

---

**11.** Furthermore, because the Act expressly confers on proprietors of restaurants, that provide seating to less than 75 persons, the discretion to determine whether to have non-

smoking sections, an ordinance that takes away that discretion clearly involves the subject matter of the Act.

broader legislative power to address such issues than a municipality without home rule,[12] the General Assembly retains the ability to limit that authority. A home rule municipality has "all legislative powers to the same degree held by the legislature unless and until it affirmatively and *expressly* passed legislation to deny that power." *Nutter*, at 50 (emphasis added); *see also* Article IX, Section 2 of the Pennsylvania Constitution (providing that "[a] municipality which has a home rule charter *may exercise any power* or perform any function *not denied* by this Constitution, by its home rule charter or *by the General Assembly at any time* ") (emphasis added). In this case, the General Assembly *expressly* passed legislation to deny that power to municipalities, *see* Section 15.1 of the Act, and, in so doing, retained that power in itself.[13] Accordingly, the County was without authority to enact the Ordinance based upon the expressed preemption language of Section 15.1.

### III.

■■■■ Finally, we address the question of whether the Restaurants are entitled to permanent, as opposed to temporary, injunctive relief. "[W]hen reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law." *Buffalo Township v. Jones*, 571 Pa. 637, 644, 813 A.2d 659, 663–64 (2002). The Restaurants assert that they have no adequate remedy at law, and that they would, consequently, be irreparably harmed without the issuance of a permanent injunction. "[I]n order to establish a claim for a permanent injunction, the party must establish his or her clear right to relief. However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law." *Id.* at 644, 813 A.2d at 663 (citations and internal quotations omitted). As discussed earlier, although the trial court thoughtfully addressed the issues raised,[14] it erred in concluding that the Ordinance was not ultra vires and, so, erred by not enjoining

---

**12.** As discussed by our Pennsylvania Supreme Court:

> Municipalities are creatures of the state and have no inherent powers of their own; rather, they "possess only such powers of government as are expressly granted to [them] and as are necessary to carry the same into effect." Therefore, a municipality ordinarily lacks the power to enact ordinances except as authorized by statute, and any ordinance not in conformity with its enabling statute is void. Under the concept of home rule, however, the locality in question may legislate concerning municipal governance without express statutory warrant for each new ordinance; rather, its ability to exercise municipal functions is limited only by its home rule charter, the Pennsylvania Constitution, and the General Assembly.

*City of Philadelphia v. Schweiker*, 579 Pa. 591, 605, 858 A.2d 75, 84 (2004) (citations omitted); *see also* 53 Pa.C.S. § 2961 (providing that "[a] municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter.")

**13.** Because this case involves express preemption, we do not address whether the five factors articulated in *Duff v. Township of Northampton*, 110 Pa.Cmwlth. 277, 532 A.2d 500, 503 (1987), apply to a home rule municipality.

**14.** We agree with the trial court's assertions that "[t]he debate on said issues belong on the floor of the Legislature, not a courtroom," and that "[t]he Courts are to interpret statutes, not make them." (Trial Court Op. at 8.) Indeed, post-argument submissions that were provided by the parties with the Court's approval indicate that the General Assembly ap-

the County from seeking to enforce the Ordinance. *City of Erie v. Northwestern Pennsylvania Food Council,* 14 Pa. Cmwlth. 355, 322 A.2d 407, 412 (1974) (holding that "statutorily prohibited conduct is the proper subject of injunctive relief.")

Based upon the foregoing, we conclude that the trial court did not err in granting the temporary injunction, but that it did err in not granting the permanent injunction. We cannot enter an order granting the injunction, but will reverse the trial court and remand the matter to the trial court with the direction to enter an order granting the Restaurants' request for a permanent injunction.

Article IX, Section 2 of the Pennsylvania Constitution, expressly authorizes the General Assembly to deny "at any time" powers that otherwise may have been reserved to a home rule municipality. In this case, the General Assembly has exercised its constitutionally given authority and, in Section 15.1, clearly stated that local legislation is preempted and superseded. Regardless of our own sense as to whether local communities should be permitted to impose stricter regulations in this area, we may only interpret and apply the law as set forth by the General Assembly and, when they specify that the Act preempts local legislation, we must apply the Act to do so. We, therefore, are constrained to find the County was without authority to enact the Ordinance. Accordingly, we must reverse the trial court's order denying the Restaurants' declaratory judgment action and reverse the trial court's order denying permanent injunctive relief

against the County with regard to the enforcement of its anti-smoking Ordinance. We remand the matter for the trial court to issue an order granting the permanent injunctive relief requested.

### ORDER

**NOW,** May 22, 2007, (1) the trial court's order denying declaratory judgment in favor of Mitchell's Bar & Restaurant, Inc. and 639 Smithfield Corporation is **REVERSED;** and (2) the trial court's order denying Mitchell's and 639 Smithfield's request for permanent injunctive relief is **REVERSED.** The matters docketed at 191 C.D.2007 and 192 C.D.2007 are **REMANDED** to the trial court with the direction to enter a permanent injunction against the County with regard to the enforcement of its anti-smoking ordinance.

Jurisdiction relinquished.

### CONCURRING OPINION BY Judge COLINS.

Although I agree with the outcome in this case, I respectfully disagree with part of the majority's analysis. The Ordinance goes well beyond any restrictions entailed in the Commonwealth's Clean Indoor Air Act.[1] It not only outlaws smoking in public places but also many private places, as well as in any workplace. Further, the Ordinance, in Section vii, purports to control smoking in "any licensed gaming facility." Licensed gaming facilities did not exist at the time of the passage of the Clean Air Act (December 21, 1988) and, therefore, it could not have been the intent

---

pears now to be debating issues related to those decided in this opinion. Nonetheless, we cannot make decisions based on conjecture on what the law may become by future legislative action, but are bound to interpret and apply the law as it is at the time the case is before us.

1. Act of April 27, 1927, P.L. 465, added by Section 2 of the Act of December 21, 1988, P.L. 1315.

of the legislature to preempt the control of smoking in facilities which could not legally exist. However, there is clearly implied preemption pursuant to the standards expressed in *Burkholder v. Zoning Hearing Board of Richmond Township*, 902 A.2d 1006 (Pa.Cmwlth.2006).

As the Bard noted, "What's in a name? That which we call a rose by any other name would smell as sweet." Therefore, under either analysis, there is preemption, and the Ordinance cannot be enforced.[2]

**2.** Senator Stewart Greenleaf has introduced Senate Bill No. 246, which act would be known as the Clean Indoor Air Act. The bill has been reported as committed from the Public Health and Welfare Committee and has recently been referred to the Senate Appropriations Committee. The present version of the proposed Clean Indoor Air Act, printer's No. 25, sets forth legislative findings concerning the harmful aspects of smoke to smokers and nonsmokers alike. The Bill sets forth its purpose as an intent on the part of the General Assembly "to protect the public health, the comfort of all persons and the environment by prohibiting smoking in public places and workplaces." Section 2(b). While the new Act affirmatively prohibits smoking in public places (with qualifications for certain establishments such as hotels), Section 12 of the proposed Act permits municipalities to enact ordinances that comply "with at least the minimum applicable standards in [the Act]."