NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3519
_____

CIGAR ASSOCIATION OF AMERICA, INC.; ITG CIGARS, INC.;
SWEDISH MATCH NORTH AMERICA, LLC;
SWISHER INTERNATIONAL, INC.

v.

CITY OF PHILADELPHIA; COMMISSIONER PHILADELPHIA
DEPARTMENT OF PUBLIC HEALTH,
Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-20-cv-03220)
District Judge: Honorable Gene E.K. Pratter
_____

Argued: June 23, 2021

Before: CHAGARES, PORTER, and ROTH,
*Circuit Judges*.

(Filed: November 24, 2021)
_____

Kelly S. Diffily **[ARGUED]**
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street, 17th Floor
Philadelphia, PA 19102

*Counsel for Appellants*

Mark A. Aronchick
Andrew M. Erdlen
John S. Summers **[ARGUED]**
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square
18th & Cherry Streets, 27th Floor
Philadelphia, PA 19103

       *Counsel for Appellees*

_____

OPINION*

_____

PORTER, *Circuit Judge*.

Faced with a sharp increase in the public's use of flavored tobacco products, the City of Philadelphia enacted Ordinance 180457 in December 2019. The measure bans the sale of tobacco products with "characterizing flavors," defined as any "taste or aroma, other than the taste or aroma of tobacco." Phila., Pa., Code § 9-639 (2021).

A group of cigar manufacturers, importers, and distributors sued Philadelphia in the Philadelphia Court of Common Pleas, seeking declaratory and injunctive relief against the Ordinance, as well as money damages. Philadelphia removed the action to federal court. The plaintiffs then moved for a preliminary injunction.

The District Court granted the plaintiffs' motion. *See Cigar Ass'n of Am. v. City of Philadelphia*, 500 F. Supp. 3d 428 (E.D. Pa. 2020). It ruled that the Ordinance was preempted by Pennsylvania state law and that the plaintiffs would suffer unrecoverable

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

economic loss unless an injunction issued. From the District Court's injunction order, Philadelphia brings this interlocutory appeal. We will affirm.

I

Pennsylvania law prohibits the sale of tobacco to minors. But Philadelphia considers state law to be inadequate to deal with the health consequences of tobacco use by both minors and adults. According to Philadelphia, most of the youth who have used tobacco report starting with a flavored tobacco product. This problem is worse in minority and low-income neighborhoods.

To combat this public health threat, Philadelphia passed the law at issue, which prohibits the sale of tobacco products with a taste or aroma other than that of tobacco. Phila., Pa., Code § 9-639. The Ordinance includes a narrow exception for "Tobacco Products Distribution Business[es]," defined as businesses closed to minors that derive ninety percent or more of their sales from tobacco products and do not sell food. *Id.*

As noted, the District Court granted the plaintiffs' motion for a preliminary injunction. *Cigar Ass'n of Am.*, 500 F. Supp. 3d at 438. The court began its analysis with a discussion of the two Pennsylvania statutes at issue: 53 Pa. Cons. Stat. § 301 and 18 Pa. Cons. Stat. § 6305. *Id.* at 430. The first statute is the preemption provision. It provides, with exceptions not relevant here, that "the provisions of [18 Pa. Cons. Stat. § 6305] (relating to sale of tobacco products) shall preempt and supersede any local ordinance or rule concerning the subject matter of [section 6305]." 53 Pa. Cons. Stat. § 301(a). The second statute, section 6305, contains five prohibitions related to the sale of tobacco, three of which expressly mention minors. 18 Pa. Cons. Stat. § 6305.

To resolve the legality of the Ordinance, the court answered two questions. *Cigar Ass'n of Am.*, 500 F. Supp. 3d at 430. First, what is section 6305's subject matter? *Id.* Second, does the Ordinance concern that subject matter? *Id.* The court concluded that the subject matter of section 6305 is "youth access to tobacco," and that the Philadelphia Ordinance does concern that subject matter. *Id.* at 430–31. Accordingly, the plaintiffs demonstrated a likelihood of success on the merits of their preemption claim. *Id.* at 431–35. Turning to the issue of irreparable harm, the court concluded, based on a report from an expert for the plaintiffs, that the plaintiffs would suffer substantial economic harm if the Ordinance were to go into effect, and that the harm would be unrecoverable because of Philadelphia's Eleventh Amendment immunity from suit for money damages. *Id.* at 436–37.

The District Court then found that "the balance of the equities and the public interest both weigh in favor of an injunction." *Id.* at 437. The court declined to "second-guess" the General Assembly's judgment "that it is in the public interest to preempt enactments like the Ordinance at issue in this case." *Id.* at 438. Having determined that all factors favored a preliminary injunction, the District Court issued one. *Id.*

This interlocutory appeal followed.

II

This case was removed to the District Court under 28 U.S.C. §§ 1441 and 1446. We have appellate jurisdiction under 28 U.S.C. § 1292(a)(1). "When reviewing a district court's grant of a preliminary injunction, we review the court's findings of fact for clear error, its conclusions of law de novo, and the ultimate decision granting the preliminary

4

injunction for an abuse of discretion." *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010). A district court abuses its discretion when it issues an injunction based "'on an erroneous view of the law or on a clearly erroneous assessment of the evidence,' which includes an improper application of the correct law to the facts." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (citation omitted) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)). A district court's factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## III

"Preliminary injunctive relief is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994)). A party seeking a preliminary injunction "must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (footnote omitted).[1] "If these gateway factors are met, a court then

---

[1] We noted in *Reilly* that "the availability of money damages for an injury typically will preclude a finding of irreparable harm." *Reilly*, 858 F.3d at 179 n.4. Philadelphia

5

considers the remaining two factors"—the balance of the equities and the public interest—"and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.*

Philadelphia argues that the plaintiffs failed to establish either of the first two gateway factors, so the entry of a preliminary injunction was an abuse of discretion. We disagree.

A

We begin with the merits. "As a city of the first class pursuant to the First Class City Home Rule Act, Philadelphia 'may exercise all powers and authority of local self-government and shall have complete powers of legislation and administration in relation to its municipal functions.'" *Holt's Cigar Co. v. City of Phila.*, 10 A.3d 902, 906 (Pa. 2011) (footnote omitted) (quoting 53 Pa. Cons. Stat. § 13131). "Under the concept of home rule, the ability of a locality to exercise municipal functions is limited only by its home rule charter, the Pennsylvania Constitution, and enactments of the General Assembly." *Id.* The General Assembly is empowered by the Pennsylvania Constitution to "deny 'at any time' powers that otherwise may have been reserved to a home rule municipality." *Mitchell's Bar & Rest., Inc. v. Allegheny Cnty.*, 924 A.2d 730, 739 (Pa. Commw. Ct. 2007) (quoting Pa. Const. art. IX, § 2). "Under the doctrine of preemption, '[a] municipality may not exercise power or authority in violation of the preemption

---

contends that the plaintiffs deceived the District Court by withdrawing certain damages claims. But the record suggests that the plaintiffs withdrew those claims because they believed those claims were meritless.

6

doctrine, which provides that when the legislature has preempted a field the state has retained all regulatory and legislative power for itself and therefore prohibits local legislation in that area.'" *Id.* at 736–37 (alteration in original) (quoting *Nutter v. Dougherty*, 921 A.2d 44, 56 (Pa. Commw. Ct. 2007) (en banc)).

"When examining an express preemption clause," Pennsylvania courts "focus on [its] plain wording . . . , which necessarily contains the best evidence of the legislature's pre-emptive intent." *JoJo Oil Co. v. Dingman Twp. Zoning Hearing Bd.*, 77 A.3d 679, 690 (Pa. Commw. Ct. 2013). The express preemption clause at issue provides that "the provisions of [18 Pa. Cons. Stat. § 6305] (relating to sale of tobacco products) shall preempt and supersede any local ordinance or rule concerning the subject matter of [section 6305]." 53 Pa. Cons. Stat. § 301(a). Section 6305, in turn, contains five prohibitions: (1) "sell[ing] a tobacco product to any minor"; (2) "furnish[ing], by purchase, gift or other means, a tobacco product to a minor"; (3) "locat[ing] or plac[ing] a vending machine containing a tobacco product in a location accessible to minors"; (4) "display[ing] or offer[ing] a cigarette for sale out of a pack of cigarettes"; or (5) "display[ing] or offer[ing] for sale tobacco products in any manner which enables [a customer] . . . to physically handle tobacco products prior to purchase unless the tobacco products are located within the line of sight or under the control of a cashier or other employee during business hours, except[ing] . . . retail stores which derive 75% or more of sales revenues from tobacco products." 18 Pa. Cons. Stat. § 6305(a). Section 6305 also requires that a minor's parent or guardian be notified in the event of a violation of the statute by the minor, provides retailers with an affirmative defense if they take certain

7

measures aimed at preventing tobacco sales to minors, and authorizes compliance checks. *Id.* § 6305(c)(1), (f), (g).

We must first identify the subject matter of section 6305. The District Court looked "to the entirety of § 6305" and concluded that "its subsections work together to combat a common subject matter: youth access to tobacco." *Cigar Ass'n of Am.*, 500 F. Supp. 3d at 434. Attacking this conclusion, Philadelphia contends that section 301 only "preempts local legislation concerning the narrow areas that Section 6305 explicitly regulates." Appellants' Br. 26. Because the Ordinance simply "restricts in what stores lawful adult purchasers can buy flavored cigars," it "does not touch on any of the specific items identified in Section 6305." *Id.* at 27.

Philadelphia's view is unpersuasive. The word "subject" signals that we must look beyond the specific prohibitions contained in section 6305 to the general "matter of concern" of the statute. *Subject*, *Black's Law Dictionary* (11th ed. 2019). The Commonwealth Court of Pennsylvania's decision in *Mitchell's Bar* confirms this understanding. There, the General Assembly enacted a statute requiring some restaurants to create smoking and non-smoking areas. *Mitchell's Bar*, 924 A.2d at 733. Allegheny County, finding that measure inadequate to deal with the negative health consequences of smoking, adopted a measure that completely banned indoor smoking in public places, including restaurants. *Id.* at 734–35. A restaurant sued Allegheny County, arguing that its ban was invalid under a state statute preempting "any local ordinance or rule concerning the subject matter of" the law requiring the establishment of smoking and non-smoking areas in some restaurants. *Id.* at 737 (internal quotation marks omitted) (quoting 35 Pa.

Cons. Stat. § 1235.1(a)). The Commonwealth Court looked to the text, title, and purpose of the state law, and concluded that the law's subject matter was "indoor smoking in restaurants." *Id.* The court did not restrict the "subject matter" of the state law to the "narrow area[]" explicitly regulated by the statute, as Philadelphia urges us to do in this case. Appellants' Br. 26. Instead, "it defined the subject matter at a high enough level of generality to succinctly communicate its essence, but also a low enough level of generality to remain tethered to the specific provisions of each subsection." *Cigar Ass'n of Am.*, 500 F. Supp. 3d at 432. We do the same here. Because section 6305's various subsections are plainly aimed at preventing and punishing tobacco use by minors, the subject matter of section 6305 is youth access to tobacco.

Two other considerations bolster this conclusion. First, section 301 preempts local laws that concern *the* subject matter of section 6305. But Philadelphia's position is that section 6305 essentially has *multiple* subject matters, with each prohibition contained in section 6305(a) being a different one. This renders Philadelphia's position in tension with the text of section 301, which contemplates only one subject matter. Second, section 6305 appears in Chapter 63 of the Crimes and Offenses title of the Pennsylvania consolidated statutes, which is entitled "Minors." Its placement there suggests that section 6305 is, in fact, about youth access to tobacco.

As a fallback position, Philadelphia contends that even if the subject matter of section 6305 is youth access to tobacco, the Ordinance is still valid because it does not concern that subject matter. Rather, the "Ordinance restricts where lawful adult

9

purchasers can get flavored cigars in Philadelphia; it facially does nothing to regulate youth access to tobacco." Appellants' Br. 30 (emphasis omitted).

That argument is also unpersuasive. The Ordinance itself expresses concern about youth access to tobacco, including that many "adult smokers started smoking by age 18" and that "many young people are able to access tobacco products without directly purchasing them." Phila., Pa., Ordinance 180,457 (Dec. 18, 2019). In fact, Philadelphia states expressly that its Ordinance is "complementary" to "efforts to reduce the overall availability of flavored tobacco products in Philadelphia," including their availability to minors. *Id.* Just like Allegheny County in *Mitchell's Bar*, Philadelphia found a state measure inadequate to deal with a problem and sought to impose its own additional requirements. The plain text of the preemption provision forbids it from doing so.

Philadelphia repeatedly insists in its briefing that what matters for preemption purposes "is what the Ordinance *does*, not the *goals* of the Councilmembers who passed it into law." Appellants' Br. 31; *see* Reply Br. 6 (urging this Court to disregard the Philadelphia City Council's hope that the Ordinance would produce "a reduction in youth smoking"). But a law's operative provisions (i.e., the things it actually permits or forbids) are typically tied to its purpose. The Ordinance is no exception. By restricting the sales of flavored tobacco products to "Tobacco Products Distribution Business[es]," which by definition must "prohibit[] minors from entering" their establishments, the Ordinance deploys a regulation aimed at stopping youth from accessing tobacco that is not sanctioned by state law. Phila., Pa., Code § 9-639. Whereas flavored tobacco products would otherwise be available for purchase in stores where minors could lawfully

10

purchase products like gum, candy, and soda (and could seek illicit access to tobacco), the Ordinance ensures that such products will be available only in places where minors may not enter. Philadelphia's acknowledgment in its opening brief "that one purpose of the Ordinance was to deter youth smoking," combined with the fact that what the Ordinance *actually does* is restrict the ability of minors to access tobacco, fatally undermines its claim that the Ordinance does not so much as "concern" youth access to tobacco. Appellants' Br. 31 (emphasis omitted).

In sum, the plaintiffs have shown that they are likely to succeed on the merits of their claim that the Ordinance is preempted by section 301.[2]

B

We turn now to the question of irreparable harm. A plaintiff seeking a preliminary injunction bears the burden of showing a likelihood that it will experience harm that cannot adequately be compensated after the fact by monetary damages. *See Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484–85 (3d Cir. 2000). "This is not an easy burden." *Adams*, 204 F.3d at 485. A plaintiff can carry its burden by showing that monetary damages are legally unavailable even if success on the merits is ultimately established. *See Pennsylvania v. President United States*, 930 F.3d 543, 574 (3d Cir. 2019), *rev'd on other grounds sub*

---

[2] Plaintiffs also argue that the Ordinance is preempted by a state fiscal law, Act 42, Fiscal Code, 72 P. S. § 232-A ("Act 42"), which preempts local regulation of licensed tobacco dealers. Philadelphia argues that Act 42 violates the Pennsylvania Constitution. As the District Court noted, we need not decide the issue of Act 42 preemption because the Ordinance is preempted by Section 301. *Cigar Ass'n of Am.*, 500 F. Supp. at 435 n.5.

*nom. Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct.

2367 (2020).

The District Court was underwhelmed by the plaintiffs' evidence of irreparable

harm, but concluded that they had "done just enough" to show a likelihood of such harm

absent injunctive relief. *Cigar Ass'n of Am.*, 500 F. Supp. 3d at 436. The District Court

noted the plaintiffs' heavy reliance "on the opinion of Dr. Peter Angelides, who holds a

Doctorate of Philosophy in Economics from the University of Minnesota." *Id.* His report

sought to "determine how much tax revenue is implicated by the Ordinance at both the

city and state levels." *Id.* The District Court explained his methodology:

> Dr. Angelides first analyzed how many "Tobacco Products Distribution
> Businesses" there are at present. The Ordinance exempts these companies
> from the sales ban, and as a result Dr. Angelides assumes that tax revenues
> from these businesses would be unaffected. Second, Dr. Angelides calculated
> the reduction in state and city taxes by estimating the sales value of cigars
> that have not yet been listed by [Philadelphia] as unrestricted, and
> multiplying sales of those cigars by the applicable tax rates. Dr. Angelides
> concludes that the Ordinance will implicate nearly $70 million dollars of
> cigar sales annually, causing [Philadelphia] to lose $5.3 million dollars in tax
> revenues per year, while the state loses $4.2 million.

*Id.*

The District Court summed up Dr. Angelides's report as a "calculation that the

Ordinance would implicate $70 million dollars of cigar sales annually." *Id.* Philadelphia

made several objections to Dr. Angelides's report; the District Court deemed these

objections "powerful." *Id.* The report assumes the number of exempt businesses will

remain constant; that many consumers of flavored tobacco will not purchase unflavored

tobacco as a substitute; that customers will not purchase flavored tobacco outside of

12

Philadelphia; and that new products could not be developed for sale that would be unrestricted. *Id.* But "while the exact *magnitude* of damage to [the plaintiffs] may be speculative," the District Court reasoned, "the *likelihood* of damage is not." *Id.* at 437. And because of Philadelphia's "Eleventh Amendment immunity" from suit for money damages, the damages that the plaintiffs would suffer "constitute irreparable injury." *Id.* The District Court thus found that the plaintiffs had satisfied the irreparable harm element of the preliminary-injunction standard.

Philadelphia concedes that the plaintiffs "would be unable to later obtain damages specifically for a violation of Section 301." Appellants' Br. 41 (emphasis omitted). Philadelphia maintains that the reason for the plaintiffs' inability to recover damages is that the Pennsylvania Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541–64, does not permit a damages action, not that Philadelphia has Eleventh Amendment immunity from suit. This makes sense because Philadelphia, in this case, is not operating as an arm of the Commonwealth and thus lacks Eleventh Amendment immunity. *See Carter v. City of Philadelphia*, 181 F.3d 339, 347–48, 358 (3d Cir. 1999). Regardless, both sides agree that Philadelphia is immune from having to pay damages if success is established on this claim. But Philadelphia urges us to overturn the District Court's irreparable-harm finding because the threat of damages in the form of lost sales is too speculative to warrant preliminary injunctive relief. We disagree.

The District Court's finding that the plaintiffs would suffer significant, unrecoverable monetary loss is not clearly erroneous. *See Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (explaining that the weighing of

evidence for purposes of a preliminary-injunction ruling is reviewed for clear error). The District Court put little weight on the "*ipse dixit*" of a vice president of one of the plaintiffs that the Ordinance would "impair Swisher's goodwill and relationships with distributors and customers." *Cigar Ass'n of Am.*, 500 F. Supp. 3d at 437 n.7. But it determined that Dr. Angelides's report sufficed to show a high likelihood of significant economic loss, even if less than $70 million. *Id.* at 437. On this record, the District Court's analysis does not leave a definite and firm conviction that a mistake has been committed. Thus, we uphold its determination that irreparable harm would result absent an injunction.

\* \* \*

The District Court did not abuse its discretion in granting a preliminary injunction. We will therefore affirm the District Court's order.